# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-70034

United States Court of Appeals
Fifth Circuit

**FILED**

August 29, 2014

Lyle W. Cayce
Clerk

ANIBAL CANALES, JR.,

Petitioner–Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before JOLLY, DAVIS, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Anibal Canales ("Canales") was sentenced to death following his conviction for the capital murder of Gary Dickerson ("Dickerson"). The Texas Court of Criminal Appeals ("CCA") affirmed his conviction and sentence on direct appeal, *Canales v. State*, 98 S.W.3d 690 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1051 (2003), and denied his first application for a writ of habeas corpus, *Ex parte Canales*, No. 54,789-01 (Tex. Crim. App. Apr. 5, 2003).

Canales filed a petition for a writ of habeas corpus in federal district court in 2004; the district court stayed proceedings to allow Canales to file a successive state habeas petition. The CCA denied his successive state habeas petition in 2008. *Ex parte Canales*, No. WR-54789-02, 2008 WL 383804 (Tex.

No. 12-70034

Crim. App. Feb. 13, 2008). Federal proceedings resumed, and the district court denied his petition. The district court found he had procedurally defaulted all of his claims except his shackling claim, which it denied.

The district court then granted Canales a certificate of appealability ("COA") on eight claims:

1. Canales received ineffective assistance of trial counsel. (*Wiggins* Claim)

2. The trial court's rulings violated Canales's right to present a defense.

3. The state used another inmate, who was working as a state agent, to solicit incriminating evidence in violation of his rights to assistance of counsel and due process of law. (*Massiah* Claim)

4. The state withheld material exculpatory evidence and presented false testimony, which violated his right to due process of law. (*Giglio/Napue* Claim and *Brady* Claim)

5. The cumulative effect of his ineffective assistance of counsel and the withholding of evidence violated his right to due process.

6. Jurors lied about their criminal backgrounds, which violated his rights to due process of law, fair trial, and to be free from cruel and unusual punishment.

7. The jury communicated with the court and with the bailiff outside his and his counsel's presence during deliberations, which violated his rights to due process of law, fair trial, and to be free from cruel and unusual punishment.

8. Canales was shackled during the punishment phase of his trial in violation of his rights to due process of law, to remain silent, and to a fair trial.

For the reasons that follow, we reverse the district court on Canales's claim that he received ineffective assistance of counsel during sentencing, and we remand that issue to the district court. We affirm the district court on all other claims.

No. 12-70034

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

On July 1, 1997, prison officials caught Larry "Dirty" Dickerson ("Dickerson), an inmate at the Telford Unit of the Texas Department of Criminal Justice ("the Unit"), with contraband that belonged to another prison gang.  Dickerson told another inmate, James Baker ("Baker"), that if Baker did not help him avoid retaliation from the gang whose contraband was stolen, Dickerson would tell prison officials about a large quantity of tobacco that was to be smuggled into the prison the next day.

The next day, prison officials intercepted a shipment of contraband tobacco intended for Baker and the Texas Mafia, a prison gang.  When the tobacco was intercepted, Dickerson was placed in administrative segregation.  At his own request, he returned to the general population about a week later.  Dickerson was found dead in his cell on July 11, 1997.  Prison authorities initially concluded that Dickerson had died of natural causes.  Only after conducting an autopsy did the State conclude that Dickerson had actually been strangled.

The Texas Mafia had a financial stake in the intercepted contraband tobacco and arranged for Dickerson's murder.  *See Canales*, 98 S.W.3d at 693.  Canales, who was also an inmate in the Unit, was a member of the Texas Mafia.  According to the magistrate judge's summary of the facts Canales and three other Texas Mafia members—William Speer ("Speer"), Jessie Barnes, and Michael Constantine—agreed to murder Dickerson.  Canales and Speer went to Dickerson's cell, and while Canales held him down, Speer strangled him.

In 1998, Canales sent a letter to Bruce Innes ("Innes") in which he described Dickerson's murder and the Texas Mafia's interest in it.  The letter was admitted into evidence at trial.

3

Dirty [Dickerson] lit the smoke and we smoked. When the last hit was took he was down by the vent on his knee and Puff [Speer] behind and me at the door. Puff put the hold on him and I grabbed his arms. It went smooth! He lost consciousness right away and strugled (sic) for a little bit. I took the time to inform Him who we were and why he's going to die. Puff told him . . "Don't even fuck with the Texas-MAFIA in hell!!" Ha! Ha! Ha! Anyway. . . we made sure the dick sucker was dead and I declared the hit complete. We put his shit smelling ass in the top bunk and went quietly out the door. I went to the yard with minutes to spare!!

R. at 2355 (magistrate judge's summary of the facts) (alterations in original) (emphasis omitted).

Canales was indicted for capital murder in November 1999. In February 2000, he sent another letter to Innes. As the district court described the letter, "although written in code, [it] appeared to ask the gang to retaliate against Larry ("Iron-head") Whited because he believed Whited had informed prison authorities about his role in the killing." The district court also included the letter:

Greetings, Sir . . As always, I come to you and all worthy with my utmost respects (sic)! I realize that I just recently sent you a letter but it has become imperative that I write you again, as you'll see . . First, I arrived at bowie county court on 2-7-00 and was arraigned for several charges. Mr.s Speers barnes and Constinetine were also there. . I must tell you that the worst has been done and its (sic) one of the charges (Main one actually) Glarinly (sic) absent was that iron headed fella . . He was not charged, which is good .. Eh? Seems that iron obes (sic) bend to the will of the state or not. I personally think so.

Perhaps some effort can be used to throw that useless material to the scrap yard. . I can't stress how important this is. As you know Iron can be shaped into what you want it to look like and not in a good way sir!! If this can't be done then I'll need to ask for legal-assistance from other arenas .. And that's not to(sic) cool! Maximum effort Ace, Maximum!! Now, I will also get with Mr. JR on the others who are involved and can help get it all in order. Also, it's possible that a legal defense fund will be placed to help

with council, (sic) legal material, clothes (for court) I'll have our attorney (who's a freeworld) get it together and put out flyers to all the best.

We'll need ya'lls (sic) help fellas and I can't stress how important it is to file that writ of dismissal in this area on that pile of scrap! This in itself would be tremendous in assisting this legal case! That's how important it is . . . You take care fellas and put out the word that help is needed on this from all areas. . . . We continue the struggle,

In solidarity

Bigfoot..

R. at 2356–57 (emphasis omitted). This letter was also admitted into evidence at trial.

In April 2000, Canales wrote a third letter to another inmate, which read in part:

Yeah bubba, I've been bummed a bit, just a small funk, no sweat .. A lot has to do with my case and its outcome or the way I see it. It's not good , and I've got a few making matters worse with their mouths! I was here with Tony Rice, I know him and his case and I know how it came about, I was in super seg with him there in 85 and then we were all on the same wing (L -Wing) in 86-87 and we got tight. I saw the downfall and how it came about and who was responsible! I've got snakes in the yard and it's getting worse from the crap coming outta the mouths of so-called homies. One dayroom call homeboy, and I'll get it all straight! Bet that! But what can I do? Nothink! Nada! Zero! Zip! 0! But, I'm a firm believer that what goes around, comes around! And that what you sow, you reap! So, I'll be content with justice in the end. TDC is not big, at all! So ......

R. at 2357. The State also introduced this letter into evidence at trial.

The 1998 letter was particularly important in the guilt phase, and the other two letters were used at punishment phase to help establish "future dangerousness," the special issue that led to his capital sentence. *Canales*, 98 S.W.3d at 699. The State also used several inmates as witnesses, including

No. 12-70034

Innes (who allegedly started working as a State agent in 1999 or 2000), Richard Driver, Jr., and Doyle Hill.

## B.     Procedural Background

Canales was convicted of capital murder in state district court, and based on the jury's answers to special issues under Texas Code of Criminal Procedure article 37.071, the court sentenced him to death. The CCA affirmed his sentence on direct appeal. *Canales*, 98 S.W.3d at 700. Canales also filed a petition for a writ of habeas corpus in state court, presenting ninety-seven issues for review; the CCA denied his petition. *Ex parte Canales*, No. 54,789-01 (Tex. Crim. App. Apr. 5, 2003).

In 2004, Canales filed a petition for a writ of habeas corpus in federal district court in the Eastern District of Texas. His petition raised thirteen claims, including the eight on which the district court granted a COA. Canales filed a motion to stay his habeas proceedings so that he could return to state court to exhaust the new claims that he had filed based on evidence that, he alleged, had been suppressed. The district court granted his motion and stayed proceedings.

Canales presented his petition to the CCA, and the CCA asked for additional briefing on Canales ineffective assistance claims. *Ex parte Canales*, No. WR-54,789-02, 2008 WL 383804, at *1 (Tex. Crim. App. Feb. 13, 2008) (per curiam) (unpublished). The CCA dismissed his application as an abuse of the writ under article 11.071, § 5(c) of the Texas Code of Criminal Procedure. [1]

Canales then returned to federal district court. The district court granted discovery, allowing Canales to investigate his claims of state misconduct and jury irregularity. More than three years later, Canales supplemented his habeas petition with additional evidence and arguments

---

[1] *See infra* Part III(B) for a more detailed discussion of the CCA's ruling.

regarding the evidence the State allegedly withheld.  The case was referred to a magistrate judge.   The magistrate judge recommended that Canales's petition be denied because the claims were procedurally defaulted and Canales could not prove cause and prejudice.  The district court accepted the magistrate judge's report and recommendation with slight modifications; the court chose not to reach certain parts of Canales's *Massiah* and *Brady* claims because, even if true, Canales could not prove prejudice.  The district court granted a COA on eight issues listed above.

## II.  STANDARD OF REVIEW

"In an appeal of the district court's denial of habeas relief, this court reviews the district court's findings of fact for clear error and its conclusions of law de novo, applying the same standard of review that the district court applied to the state court decision." *Roberts v. Thaler*, 681 F.3d 597, 603 (5th Cir. 2012) (citations and internal quotation marks omitted).  The standard of review that we apply to each claim, however, depends on whether the claim has previously been adjudicated on the merits in state court.

### A.    Independent and Adequate State Grounds

Federal courts lack jurisdiction to review a habeas claim "if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision."  *Id.* at 604 (citation and internal quotation marks omitted).  So, as a general rule, "a state prisoner's habeas claims may not be entertained by a federal court when (1) a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (alterations in original) (internal quotation marks omitted).  There is, however, an exception to this rule.  A federal court may consider the merits of

a procedurally defaulted claim if the petitioner shows "cause for the default and prejudice from a violation of federal law." *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

In order to demonstrate cause, the habeas petitioner must "show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court." *McClesky v. Zant*, 499 U.S. 467, 493 (1991) (citation and internal quotation marks omitted). Examples of these objective factors include "interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel." *Id.* at 494 (citation and internal quotation marks omitted). "[T]he question is whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter through the habeas process." *Id.* at 498. Once cause has been established, the habeas petitioner must then show "actual prejudice." *United States v. Frady*, 456 U.S. 152, 167 (1982) (internal quotation marks omitted). This means the petitioner must prove that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 170.

**B.    AEDPA Deference**

If, however, a state court adjudicated the claim on the merits, a different standard of review applies under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), §§ 101-108, Pub. L. No. 104-132, 110 Stat. 1214 (codified as amended at 28 U.S.C. §§ 2244, 2253-2266). A federal court may not grant habeas relief to any claim that was adjudicated on the merits in state court, unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This is also known as AEDPA deference.

A state court decision can be contrary to Supreme Court precedent in two ways: (1) if "'the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law'; or (2) 'the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court].'" *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). "A state court's decision is an unreasonable application of clearly established federal law whenever the state court identifies the correct governing legal principle from the Supreme Court's decisions but applies that principle to the facts of the prisoner's case in an objectively unreasonable manner." *Id.* (quoting *Young v. Dretke*, 356 F.3d 616, 623 (5th Cir. 2004) (internal quotation marks omitted)). "An unreasonable application may also occur if 'the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Id.* at 787–88 (alteration in original) (quoting *Young*, 356 F.3d at 623). The state court's factual findings are presumed to be correct unless a petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. DISCUSSION

Our discussion proceeds in three parts. First we address Texas's argument that the COA is invalid for several of Canales's claims. Next, we determine whether the CCA's dismissal of Canales's petition for a writ of

habeas corpus was based on independent and adequate state grounds. Then, we turn to the eight claims on which the district court granted Canales a COA.

## A.    Validity of the COA

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."    28 U.S.C. § 2253(c)(1)(A).    "A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right."    *Id.* § 2253(c)(2). The COA "shall indicate which specific issue or issues satisfy the showing required" in § 2253(c)(2).    *Id.* § 2253(c)(3).

Texas argues that the COA is invalid as to Canales's ineffective assistance of counsel claims, his claim that the trial court rulings deprived him of his right to present a defense, his cumulative impact claim, and his jury claims.    As Texas points out, if the district court denies a habeas petition on procedural grounds, a COA should only issue if "the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."    *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Texas claims that the district court only found that its merits rulings were debatable; the district court did not make the requisite determination that its procedural rulings were debatable.    Thus, according to the State, the COA is invalid, and we should dismiss these five claims due to procedural default.

We disagree.    First, despite the seemingly mandatory language of § 2253(c)(3), the failure of the COA to meet the requirements of § 2253(c)(3) does not deprive this court of jurisdiction.    *Gonzalez v. Thaler*, 132 S. Ct. 641, 652 (2012).    Second, the procedural rulings in this case are complicated, and

the parties devote a significant portion of their briefing to arguing about whether the district court correctly determined that Canales's claims were procedurally defaulted. Thus, even though the district court did not specifically state that its procedural rulings were debatable, they are, *see infra* Part III(B), and so the district court was correct to issue the COA. Thus, because the § 2253(c)(3) requirement is not jurisdictional and the procedural rulings are debatable, we decline to hold that the COA is invalid.

## B.    Independent and Adequate State Grounds

"[W]hen . . . a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion," the Supreme Court has directed federal courts to "accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so." *Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983). If, however, "it does not fairly appear that the state court rested its decision primarily on federal grounds, it is simply not true that the 'most reasonable explanation' is that the state judgment rested on federal grounds." *Coleman*, 501 U.S. at 737. "This distinction matters in a Section 2254 proceeding because [this Court] do[es] not reach the merits when the state court denied relief due to an adequate state law basis for the decision, independent of the merits of the federal claim." *Balentine v. Thaler*, 626 F.3d 842, 849 (5th Cir. 2010) (citing *Coleman*, 501 U.S. at 729).

The CCA dismissed Canales's state habeas petition as an abuse of the writ, which this Court "[has] long acknowledged . . . can sometimes qualify as an independent and adequate state-law ground that functions as a procedural bar to federal-court merits review of habeas claims." *Rocha v. Thaler* (*Rocha II*), 626 F.3d 815, 829 (5th Cir. 2010). Under Texas law, when a petitioner files a subsequent application for a writ of habeas corpus, a court "may not consider

the merits of or grant relief based on the subsequent application" unless the petitioner shows:

> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;

> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or

> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.

Tex. Code Crim. Proc. Ann. art. 11.071, § 5(a). If the petitioner fails to meet the requirements in § 5(a), the CCA dismisses the petition as an abuse of the writ. *Id.* § 5(c).

The CCA has interpreted § 5(a)(1) as actually involving two steps: (1) the legal or factual basis of the claims were previously unavailable and (2) "the specific facts alleged, if established, would constitute a constitutional violation that would likely require relief from conviction." *Ex parte Campbell*, 226 S.W.3d 418, 421 (Tex. Crim. App. 2007). "Whether a § 5(a)(1) dismissal is independent of federal law turns on case specific factors. If the CCA's decision rests on availability, the procedural bar is intact." *Rocha II*, 626 F.3d at 835. If, on the other hand, "the CCA determines the claim was unavailable but that [the habeas petitioner did] not make a prima facie showing of merit, a federal court can review that under the [standard set out in § 2254(d)]". *Id.* This Court has interpreted *Campbell* to mean that the CCA applies the separate § 5(a)(1)

12

steps sequentially. *Id.* at 834. If the CCA dismisses the petition under § 5(a)(2) or § 5(a)(3), this Court can also review it under the standard in § 2254(d).

The issue here is more complicated because the CCA dismissed Canales's subsequent habeas petition as an abuse of the writ under § 5(a) without specifying whether it was doing so based on availability or based on the merits. *See Ex parte Canales*, 2008 WL 383804, at *1 ("We have reviewed the application and the briefs of both parties and find that all of the allegations fail to satisfy the requirements of Article 11.071, § 5(a)."). This Court has discussed how to deal with the CCA's boilerplate dismissal for an abuse of the writ before. *See, e.g., Balentine*, 626 F.3d at 849–57; *Hughes v. Quarterman*, 530 F.3d 336, 342 (5th Cir. 2008) (nothing in CCA's "perfunctory dismissal" of the petition "suggest[ed] that it actually considered or ruled on the merits"). We have explained that we must first determine if the state court decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law." *Rocha II*, 626 F.3d at 836 (quoting *Coleman*, 501 U.S. at 735) (internal quotation marks omitted). "There must be more than silence. In some form, the state court has to make a fair indication that the merits of the claim were reached." *Balentine*, 626 F.3d at 854. When the dismissal is silent, this Court looks to the arguments made in state court to try to determine whether the dismissal was based on independent and adequate state law or whether instead it relied on or was interwoven with federal law. *Id.* at 854–56.

Here, the CCA's dismissal of Canales's petition did not specify on which subsection of § 5(a) it rested. But the order did explain that the CCA had asked for additional briefing on the following questions:

> (1) Is *Wiggins v. Smith*, 539 U.S. 510, 527 (2003), new law or such an extension of old law that this Court should hold that it meets the dictates of Article 11.071 § 5?

No. 12-70034

> (2) If *Wiggins* is new law or such an extension of old law that it should meet the dictates of Article 11.071 § 5, under what standard should a court judge the effectiveness of counsel's actions undertaken before the decision in *Wiggins* was announced?

*Ex parte Canales*, 2008 WL 383804 at *1.

Canales uses this request for additional briefing to argue that the CCA's dismissal was not independent of federal law. He points out that the CCA specifically asked for briefing on the merits of his *Wiggins* claim. Canales also argues that the CCA knows how to make a clear statement that it is not reaching the merits, *see, e.g.*, *Ex parte Foster*, No. WR-65,799-03, at *2 (Tex. Crim. App. Sept. 12, 2011) (unpublished); because the CCA did not make a clear statement that it was avoiding the merits, Canales argues, the CCA actually reached the merits. Finally, Canales attempts to distinguish his case from others where we have found that a boilerplate dismissal was independent of federal law. He claims that in those cases, the habeas petitioner had not argued he could prove his claim was unavailable at the time of his first state habeas application. *See, e.g.*, *Balentine*, 626 F.3d at 855. But Canales argued that he could show that his claim was unavailable, and thus he urges us to hold that the CCA reached the merits of his petition.

We find these arguments unpersuasive, and we hold that the CCA's dismissal of Canales's petition was based on independent and adequate state grounds. First, we consider all of Canales's claims except his *Wiggins* claim. We begin by noting that there is no indication that the CCA reached the merits of any these claims. *See Puckett v. Epps*, 641 F.3d 657, 665 (5th Cir. 2011) ("To avoid procedural bar, in some form, the state court has to make a fair indication that the merits of the claim were reached." (citation and internal quotation marks omitted)). Canales's subsequent state habeas petition confirms that we should apply a procedural bar to these claims. Canales did not ask the CCA to reach the merits of his claims. Instead, he argued that the legal and factual

14

bases of his claims were previously unavailable under Texas Code of Criminal Procedure article 11.071, § 5(a)(1), and he asked the CCA to remand his claims to state district court. The fact that the CCA dismissed his petition as an abuse of the writ, instead of remanding them to state district court for a merits determination, shows that the CCA dismissed them pursuant to § 5(a)(1). We have previously held that "the Texas abuse of the writ doctrine has been consistently applied as a procedural bar, and that it is an independent and adequate state ground for the purpose of imposing a procedural bar." *Hughes*, 530 F.3d at 342; *see also Rocha II*, 626 F.3d at 835 ("If the CCA's decision rests on availability, the procedural bar is intact."). Thus, we apply the procedural bar to these claims.

While the question of whether the CCA's dismissal of Canales's *Wiggins* claim is interwoven with federal law is more difficult to resolve, we hold that the procedural bar applies to his *Wiggins* claim. As Canales points out, there is some indication that the CCA may have reached the merits of Canales's *Wiggins* claim: the CCA asked for briefing on the merits of that claim. So, we must look to the arguments made in state court to try to determine whether the dismissal was based on independent and adequate state law or whether instead it relied on or was interwoven with federal law. *See Balentine*, 626 F.3d at 854–56. In his subsequent state habeas petition, Canales argued that "the legal basis for his claims was previously unavailable." *See* Tex. Code Crim. Proc. Ann. art. 11.071, § 59(a)(1). As with his other claims, Canales did not ask the CCA to reach the merits of his *Wiggins* claim. While he argued that he could meet the standards set out in § 5(a)(2) and § 5(a)(3), he did not ask the CCA to make that decision, instead asking the CCA to remand his *Wiggins* claim to Texas state district court. As we discussed above, the CCA's decision to dismiss his application without remanding it to the state district court shows that its decision rested on independent and adequate state grounds. *Cf.*

15

*Coleman*, 501 U.S. at 744 ("There is no doubt that the Virginia Supreme Court's 'consideration' of all filed papers [which discussed the merits of Coleman's federal claims] adds some ambiguity, but we simply cannot read it as overriding the court's explicit grant of a dismissal motion based solely on procedural grounds. Those grounds are independent of federal law.").

Thus, we hold that a procedural bar applies to all of Canales's claims.

## C.     Claims on which the District Court Granted a COA

As discussed above, we agree with the district court's decision to apply a procedural bar to all of Canales's claims. Because his claims are procedurally defaulted, we will not review them unless Canales "can demonstrate cause for the default and actual prejudice as a result of the alleged violation[s] of federal law." *Coleman*, 501 U.S. at 749.

### 1.  Ineffective Assistance of Counsel (*Wiggins* Claim)

Canales argues that he received ineffective assistance of counsel during both the guilt and sentencing phases of his trial. When the district court considered these claims, it found that Canales could not prove cause and prejudice to excuse the procedural default. But since the district court issued its opinion, the Supreme Court has clarified the ways a habeas petitioner can show cause to excuse a procedural default.

The district court's procedural ruling relied on our decision in *Ibarra v. Thaler*, 687 F.3d 222 (2012), *overruled by Trevino v. Thaler*, 133 S. Ct. 1911 (2013). *Ibarra* held that *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), did not apply in Texas. In *Martinez*, the Supreme Court considered for the first time whether ineffective assistance of counsel in an initial-review collateral proceeding could provide cause to excuse procedural default of a claim for ineffective assistance of trial counsel. *Martinez*, 132 S. Ct. at 1316. The Supreme Court answered in the affirmative, holding that when an initial-review collateral proceeding is the first time a petitioner can raise a claim for ineffective assistance of trial

counsel, the ineffective assistance of counsel in that initial-review collateral proceeding can provide cause to excuse the procedural default. *Martinez*, 132 S. Ct. at 1318. In *Ibarra*, we reasoned that *Martinez* did not apply in Texas because Texas law did not require that a Texas defendant raise his ineffective assistance of trial counsel claim for the first time in a collateral proceeding. *Ibarra*, 687 F.3d at 227. But in *Trevino*, the Supreme Court explained that *Martinez* applies in Texas because the "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino*, 133 S. Ct. at 1921. Thus, in light of *Trevino*, there is a proving cause for procedural default that was not available when Canales was before the district court.

In order to establish cause to excuse his procedural default, Canales must prove that his counsel in the initial-review collateral proceeding was deficient; that is, he must show that the representation of his initial-review collateral proceeding "fell below an objective standard of reasonableness." *See Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Martinez*, 132 S. Ct. at 1318 (citing *Strickland* as the appropriate standard for judging whether state habeas counsel was ineffective). As part of establishing cause, Canales must also show that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).

To excuse the procedural default fully, Canales would then be required to prove that he suffered prejudice from the ineffective assistance of his trial counsel. *See Martinez*, 132 S. Ct. at 1321 (remanding to the court of appeals to "address the question of prejudice"). Prejudice requires a showing that there is "a reasonable probability that, but for [trial] counsel's unprofessional errors,

the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Sells v. Stephens*, 536 F. App'x 483, 493 (5th Cir. 2013) (unpublished) ("In order to satisfy the performance prong, Sells must show that both his trial and habeas counsels' representation fell below an 'objective standard of reasonableness.' Under the second prong, Sells must show that there is 'a reasonable probability that, absent the errors, the sentence . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." (citations omitted)).

We look first at Canales's claim that his trial counsel was ineffective during the guilt phase of his trial. Canales first argues that his trial counsel failed to impeach witnesses effectively. Second, Canales claims his trial counsel was ineffective in affirmatively aiding the State in proving part of his murder charge. Canales was charged under Texas Penal Code § 19.03(a)(5)(B) "which makes it a capital offense for a person to knowingly or intentionally murder another person, while incarcerated in a penal institution, with the intent to establish, maintain, or participate in a combination or in the profits of a combination." *Canales*, 98 S.W.3d at 692–93. He argues that his trial counsel essentially conceded the combination element when they tried to inculpate Whited, who was a member of the Texas Mafia, in the murder.

The problem is that Canales has not established cause for the procedural default of his claim of ineffective assistance of trial counsel during the guilt phase because the claim is not substantial. Though Canales argues his trial counsel should have impeached witnesses more effectively, our review of the record shows that the jury actually heard testimony regarding the witnesses' inconsistent statements, racism, and potential bias against Canales—the evidence that he claims his trial counsel should have used for impeachment. In addition, there was other evidence—aside from testimony tying Whited to

the murder—that proved the combination element. The state put forward evidence of Canales's membership in the Texas Mafia that proved the combination element of the crime even without any inculpating Whited in the murder. *See Canales*, 98 S.W.3d at 697. Thus, because Canales's claim of ineffective assistance of trial counsel during the guilt phase of his trial lacks merit, he cannot prove cause to excuse the procedural default.

We turn next to Canales's claim that he received ineffective assistance of trial counsel during the sentencing phase of his trial. Canales argues his trial counsel was ineffective because he failed to thoroughly investigate and present mitigation evidence. He also argues that the performance of his state habeas counsel fell below an objective standard of reasonableness. Canales's state habeas counsel did not conduct a mitigation investigation due to a misunderstanding of funding for habeas investigations: his state habeas counsel thought his funding was capped at $25,000, and so he only dedicated $2,500 to investigation—and most of that went to issues related to innocence. Both parties agree, however, that funding was not capped at $25,000.

First, we agree with Canales that the performance of his state habeas counsel fell below an objective standard of reasonableness. The Supreme Court recently considered a similar situation in which trial attorney failed to request additional funding to replace an inadequate expert because of a mistaken belief about the amount of funding available. *Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014) (per curiam). The Court held that the trial lawyer's decisions "based not on any strategic choice but on a mistaken belief that available funding was capped [at a certain amount]" constituted deficient performance. *Hinton*, 134 S. Ct. at 1088–89. Similarly, Canales's state habeas counsel did not make a strategic choice to forego a mitigation investigation. Instead, he chose not to pursue that claim in any depth because he thought he could not

receive any additional funding to pursue those claims. Accordingly, his performance fell below an objective standard of reasonableness.

Because Canales has established that his state habeas counsel's behavior was deficient, we now consider whether there is some merit to his claim that his trial counsel were ineffective at sentencing. By Canales's trial counsel's own admission, they did not conduct *any* mitigation investigation. A declaration from his trial counsel shows that trial counsel did not hire a mitigation specialist, interview family members or others who knew him growing up, or "collect any records or any historical data on his life." During sentencing, the only mitigation evidence his counsel presented was that he was "a gifted artist" and "a peacemaker in prison." Even the prosecutor noticed the dearth of any mitigating evidence, stating "it's an incredibly sad tribute that when a man's life is on the line about the only good thing we can say about him is that he's a good artist."

If Canales's trial attorneys had conducted a mitigation investigation, they would have discovered an extensive history of physical abuse, emotional abuse, and neglect. Canales's mother was an alcoholic who neglected her children, and his father was violent, angry, and irrational. After Canales's parents separated, his mother married a man who was physically abusive, beating Canales with a belt and fist and forcing him to strip naked prior to these beatings. Canales's step-father sexually abused his sister, and Canales attempted, in vain, to protect her. The family lived in poor housing, infested with flea and lice and located in "gang central." Canales's grandparents were also physically and verbally abusive. Eventually, Canales's mother left him with his father. The beatings then resumed, and Canales's father would beat him "until his father got tired." This led Canales to abuse drugs and alcohol, "hook[] up with the wrong people," and begin committing crimes. He lived in half-way houses for part of his teenage years. Canales's sister stated that the

death of Canales's mother impacted Canales severely and that he "went off the deep end" after she passed away.

Based on these facts, we hold that Canales's ineffective assistance of trial counsel claim has some merit. First, we conclude that Canales's trial counsel's performance was deficient during the sentencing phase. A decision not to investigate "must be directly assessed for reasonableness in all the circumstances." *See Wiggins*, 539 U.S. at 533 (quoting *Strickland*, 466 U.S. at 691). Considering all of the circumstances here, Canales's trial attorneys' performance was not reasonable. His trial counsel did not make a reasoned decision not to conduct a mitigation investigation. *Cf. Wood v. Allen*, 558 U.S. 290, 301–03 (2010) (denying habeas relief and noting that "counsel's failure to pursue or present evidence of [the defendant's] mental deficiencies was not mere oversight or neglect but instead the result of a deliberate decision to focus on other defenses"). His trial counsel's failure to consider mitigation evidence had nothing to do with Canales or any attempt on his part to obstruct his trial counsel in pursuing an investigation into mitigating evidence. *Compare Schriro v. Landrigan*, 550 U.S. 465, 478–81 (2007) (state court did not unreasonably apply *Strickland* in denying habeas relief where the defendant refused to allow his counsel to present mitigating evidence from his family and the only other mitigating evidence was that the defendant may have a genetic predisposition to violence), *with Rompilla v. Beard*, 545 U.S. 374, 381 (2005) (state court unreasonably applied Strickland in denying habeas relief where defendant was merely "uninterested in helping" and other mitigating evidence included school records and records of prior incarcerations). Simply put, his counsel's failure to do any investigating "resulted from inattention, not reasoned strategic judgment." *See Wiggins*, 539 U.S. at 256.

Second, Canales has shown that there is some merit to the claim that he was prejudiced by his trial counsel's deficient behavior during sentencing. The

*only* mitigation evidence put forward during sentencing was that Canales was a gifted artist and a peacemaker in prison. The jury did not hear *any* evidence regarding Canales's childhood, which was full of violence and privation. While there was certainly evidence to support a finding of future dangerousness, we are not convinced that evidence is enough to say that Canales's claim is not substantial. We are persuaded that the Supreme Court's decisions in *Williams v. Taylor*, 529 U.S. 362 (2000), and *Rompilla v. Beard*, 545 U.S. 374 (2005) show that Canales's claim has, at the very least, some merit. *See Rompilla*, 545 U.S. at 390–93 (state court decision denying habeas relief was unreasonable where additional mitigation investigation regarding the defendant's abusive, impoverished childhood *and* alcohol-related causes of the defendant's juvenile incarcerations might have influenced the jury's evaluation of culpability); *Williams*, 529 U.S. at 398–99 (state court decision denying habeas relief was unreasonable where new mitigation evidence, including "the graphic description of [the defendant's] childhood, filled with abuse and privation, or the reality that he was 'borderline mentally retarded,' might well have influenced the jury's appraisal of his moral culpability" despite the "strength of the prosecution evidence supporting the future dangerous aggravating circumstance"). Given all this, there is some merit to the notion that, had trial counsel's performance not been deficient during sentencing, "at least one juror would have struck a different balance." *See Wiggins*, 539 U.S. at 537. Thus, we conclude that Canales's claim of ineffective assistance of trial counsel during sentencing is substantial.

The question then becomes whether Canales can actually prove *prejudice* due to the deficient performance of his habeas counsel. Claims of ineffective assistance of counsel present a mixed question of law and fact. *Lamb v. Johnson*, 179 F.3d 352, 356 (5th Cir. 1999). And, as the Supreme Court has explained, "the district court is better positioned" than appellate courts to

address mixed questions of law.  *See Brown v. Plata*, 131 S. Ct. 1910, 1932 (2011) (internal quotation marks and citations omitted).  The district court, though, has not yet addressed Canales's ineffective assistance of counsel claim because its order was issued before *Trevino.*  Moreover, Canales has not yet had the chance to develop the factual basis for this claim because, until *Trevino,* it was procedurally defaulted.  While there is sufficient information before this Court for us to conclude that there is some merit to Canales's claim of ineffective assistance of counsel, we think the district court should address the prejudice question in the first instance.  Our recent post-*Trevino* decisions support this decision.  In cases where the district court made its decision before *Trevino* and the district court did not make an alternative merits determination, we have remanded the case to the district court.  *See Balentine v. Stephens*, 553 F. App'x 424, 425 (5th Cir. 2014) (per curiam) (unpublished); *Trevino v. Stephens*, 740 F.3d 379 (5th Cir. 2014) (per curiam).

Thus, we hold that Canales has established cause to excuse the procedural default of his claim of ineffective assistance of trial counsel at sentencing.  We remand this claim for the district court to consider whether Canales can prove prejudice as a result of his trial counsel's deficient performance, and if so, to address the merits of his habeas petition on this claim.[2]

2.  Use of State Agent to Solicit Incriminating Evidence (*Massiah* Claim)

Canales argues that Texas used Innes as a state agent to solicit incriminating evidence from him after he was indicted in violation of his Sixth and Fourteenth Amendment rights.  An individual's Sixth Amendment rights

---

[2] Texas argues that if we decide to remand any claims to the district court, we should deny Canales the opportunity to have an evidentiary hearing.  We decline to take this step, and we leave the determination of whether an evidentiary hearing is appropriate to the district court.

have been violated when the state is allowed to use "against him at his trial evidence from his own incriminating words, which [state] agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." *Massiah v. United States*, 377 U.S. 201, 206 (1964). A *Massiah* violation has three elements: "(1) the Sixth Amendment right to counsel has attached; (2) the individual seeking information from the defendant is a government agent acting without the defendant's counsel's being present; and (3) that agent 'deliberately elicit[s]' incriminating statements from the defendant." *Henderson v. Quarterman*, 460 F.3d 654, 664 (5th Cir. 2006). The right to counsel attaches when the defendant is indicted. *See Patterson v. Illinois*, 487 U.S. 285, 290–91 (1988). A *Massiah* violation can occur when the government agent is an undisclosed government informant. *See United States v. Henry*, 447 U.S. 264, 269–74 (1980).

Canales argues he can establish both cause and prejudice. The dispute here focuses on the February 2000 letter, which Canales wrote to Innes. In the letter, Canales appears to ask the gang to retaliate against Larry Whited because Canales believed Whited had turned him in for his role in Dickerson's killing. Canales argues that Innes was already working for the state by the time Canales was indicted in November 1999. He also claims the Texas encouraged Innes to elicit inculpatory information from him. Canales further claims that Texas suppressed the information that Innes was working as a state agent. Thus, Canales claims he can show cause for the procedural default because state officials prevented him from learning this information.

Canales also argues that this had a substantial and injurious effect on his trial and his sentence. He claims the February 2000 letter was necessary to introduce the 1998 confessional letter. Canales explains the February 2000 letter was matched to him through his fingerprint. He argues the prosecution used that fingerprint to admit the 1998 confessional letter. He then claims

that without the 1998 confessional letter, the state would only have had the testimony of unreliable inmate witnesses. Moreover, he argues that the prosecution used the February 2000 letter as evidence of his future dangerousness, which it needed for Canales to receive the death penalty. Thus, he claims he has shown actual prejudice.

Even if Canales could establish cause, we hold he cannot prove actual prejudice based on these alleged violations. Looking at the guilt phase of the trial, Canales's primary argument is that, without the February 2000 letter, Texas could not have admitted the 1998 confessional letter. But the prosecution relied on more than fingerprint evidence to authenticate the 1998 confessional letter: the State also offered testimony matching the letter to Canales's handwriting. Though Canales disparages this as lay-witness testimony, he does not argue that it would have been insufficient to admit the 1998 letter. Further, under the Texas Rules of Evidence, nonexpert opinion on handwriting can be used to authenticate and identify documents. Tex. R. Evid. 901. Thus, the confessional letter could have been admitted even without the February 2000 letter.

Turning next to sentencing, the state did not rely solely on the February 2000 letter to prove future dangerousness. *Cf. Westbrook v. Thaler*, 585 F.3d 245, 256 (5th Cir. 2009) (holding that the alleged *Massiah* violation in mistakenly admitting evidence that the defendant solicited the murder of three people did not have a substantial and injurious effect on sentencing in light of evidence that the defendant had murdered five people and solicited murders of two others). The jury had the April 2000 letter, wherein Canales threatened informants. The jury had evidence that Canales was part of a gang, and that Canales had committed murder in connection with his prison gang (because the jury had convicted him based on the combination element). The jury also knew that Canales was in prison serving a fifteen-year sentence for aggravated

sexual assault and that he had already served a five-year sentence on an earlier sexual assault.  Thus, Canales has not proven that the alleged *Massiah* violation had a substantial and injurious effect on his trial.[3]

### 3.  Failure to Correct False Testimony (*Giglio/Napue* Claim)

Canales next argues that the state solicited false testimony from Innes, or at least, allowed testimony the State knew was false to go uncorrected.  The Supreme Court has repeatedly held that "a conviction obtained through false evidence, known to be such by representatives of the State" violates a defendant's constitutional rights.  *See Miller v. Pate*, 386 U.S. 1, 7 (1967) (citing cases).  A violation occurs where there is a "deliberate deception of court and jury by the presentation of testimony known to be perjured."  *Mooney v. Holohan*, 294 U.S. 103, 112 (1935).  "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears."  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  To obtain relief, Canales must show "1) the testimony was actually false, 2) the state knew it was false, and 3) the testimony was material."  *Pyles v. Johnson*, 136 F.3d 986, 996 (5th Cir. 1998) (internal quotation marks and citations omitted).  The testimony is material if "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. Agurs*, 427 U.S. 97, 103 (1976) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

---

[3] Texas suggests that the district court improperly reached the merits of Canales's *Massiah* claim.  The magistrate judge's report and recommendations indicates that the magistrate judge reached the merits, but the district court made some modifications when it accepted the proposed findings and recommendations.  Specifically, the district court stated that it had determined "that the admission of the [February 2000] letter did not have a substantial and injurious effect or influence in determining the jury verdict."  The district court's language mirrors language the Supreme Court has used to define prejudice.  *See Frady*, 456 U.S. at 170 (explaining proving actual prejudice means the petitioner must prove that the errors "worked to his *actual* and substantial disadvantage").  Thus, we agree with the district court's decision to deny Canales's *Massiah* claim because it was procedurally defaulted and conclude he did not prove actual prejudice.

No. 12-70034

Neither party disputes that Canales can establish cause for procedurally defaulting this claim, but the parties disagree over whether the testimony was false and whether it was material. Canales argues Innes gave false testimony about the 1998 confessional letter. Canales says Innes testified he asked Canales to write him a letter describing Dickerson's murder, and he watched Canales tie the kite[4] on a string that Innes pulled into his cell. But Canales says a prison official's handwritten notes from a meeting with Innes show that another inmate received the letter from Canales.[5] Canales argues that the state had access to the prison official's notes, and so the state knew Innes's trial testimony was false. Further, he argues it was material because Innes's credibility was important, and knowing this false testimony would have given a different picture of the state's case.

We disagree and hold that the district court was correct to deny this claim. First, Canales has not established that Innes's testimony was false or that the State knew that it was false. The prison official's handwritten notes are not dated; they do not say whose comments were being recorded; and they do not mention Innes at all. As the district court concluded, it is far from clear that the notes even refer to Innes. Moreover, while Innes was an important witness, the interview notes do not directly contradict his testimony. The notes do not state that Innes was the subject of the interview; if the notes were from

---

[4] According to trial testimony, a kite is a handwritten note that is written between inmates.

[5] According to both parties, the notes stated in full:
> written by Canales
> Another inmate has the letter - he's not involved @
> all – will have to get the letter from him
> Another inmate rec the letter from Canales
> This inmate sent me the letter to see it
> The letter is step for step how the letter [sic]
> went down.
> The letter is in Canales' handwriting

27

an interview with someone else, Innes could be the other inmate referenced in the interview notes who received Canales's letter. *Cf. United States v. Fisher*, 106 F.3d 622, 634–35 (5th Cir. 1997) (finding Brady violation where the false testimony was "directly contradictory"), *abrogated on other grounds by Ohler v. United States*, 529 U.S. 753 (2000).

Moreover, even if the testimony was false, Canales has not established that the testimony was material. While the confessional letter itself was very important to the prosecution's case, the allegedly false testimony only served to explain how Innes received the letter, not to the substance of the letter. So, even if the false testimony might have made the jury question Innes's credibility, it would not have changed the fact that the letter was signed by Canales, written in Canales's handwriting, and described Dickerson's murder. Thus, we cannot say that there is a reasonable likelihood that the false testimony affected the judgment of the jury, and so the district court correctly denied Canales's false testimony claim.

4. Failure to Disclose Impeachment Evidence (*Brady* Claim)

Canales argues that Texas suppressed several pieces of impeachment evidence in violation of his Sixth and Fourteenth Amendment rights. In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. "There are three components of a true *Brady* violation": (1) the evidence at issue, whether exculpatory or impeaching, must be favorable to the accused; (2) "that evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Evidence is material for purposes of *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," meaning the probability is "sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985) (internal quotation marks omitted).  To evaluate materiality, courts should not simply ask whether, "after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions." *Strickler*, 527 U.S. at 290.  Instead, the proper inquiry is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.*  The materiality of the suppressed evidence should be assessed collectively. *Kyles v. Whitley*, 514 U.S. 419, 436 (1995).  The prejudice component is the same as materiality for Brady purposes. *Banks v. Dretke*, 540 U.S. 668, 691 (2004) ("[C]oincident with the third *Brady* component (prejudice), prejudice within the compass of the 'cause and prejudice' requirement exists when the suppressed evidence is 'material' for *Brady* purposes.").

Though neither party disputes that Canales can demonstrate cause for his procedural default, they disagree about whether Canales can prove prejudice.  Canales argues the state suppressed five pieces of impeachment evidence.  First, Innes was also a suspect in Dickerson's murder.  Second, Innes had a weapon-possession charge dismissed as in exchange for testifying.  Third, the State assisted inmate witnesses with issues concerning housing, prison conditions, and parole.  Fourth, the State encouraged Innes and Whited to communicate with each other before trial.  Fifth, Innes continued in prison gang activities after renouncing his membership.  Canales claims that witness credibility was an important issue in the case, and that looking at the

cumulative impact of this evidence, there is a reasonable probability the outcome would have been different.

We hold that Canales has not demonstrated actual prejudice that would excuse the procedural default. Turning first to Canales's claim that the State assisted prisoners who testified against him, the record shows that the jury heard at least some of this information at trial. Canales's attorneys at least asked some inmate–witnesses about being encouraged to help the State in exchange for benefits, such as help with their cases and being moved to a different prison. "The materiality of Brady material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state." *Rocha v. Thaler* (*Rocha I*), 619 F.3d 387, 396 (5th Cir. 2010) (quoting *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004) (internal quotation marks omitted)). Our Court has granted habeas relief based on *Brady* claims when the impeachment evidence that was withheld was the only direct evidence linking the defendant to the crime. *See LaCaze v. Warden La. Corr. Inst. for Women*, 645 F.3d 728, 738 (5th Cir. 2011); *Tassin v. Cain*, 517 F.3d 770, 779–81 (5th Cir. 2008). We have also considered it important if the prosecutor told the jury that the witnesses had no reason to lie. *LaCaze*, 645 F.3d at 738; *Tassin*, 517 F.3d at 781. Neither of those circumstances is present here. In this case, the witness testimony was not the only evidence linking the defendant to the crime; the jury had Canales's letter describing Dickerson's murder. In addition, the prosecutor raised the issue of the inmate–witness's credibility, telling the jury that reliance on inmate testimony was a "legitimate concern," that "inmates lie," and stating "I would be an utter fool to stand here and try to convince you to believe everything our witnesses told you."

Turning next to Canales's claims about the information that was allegedly withheld about Innes, we note that Canales's attorney questioned Innes about the deal he received in exchange for his testimony. The jury heard

that Innes had a pending weapon charge that, combined with his two prior convictions, could have resulted in a 99-year sentence, but that Innes only received two three-year sentences to run concurrently.

While the allegation that the State suppressed the fact that Innes was a suspect is more serious, that does not change our conclusion. This Court and other courts have sometimes held that withholding evidence of another suspect was a *Brady* violation, particularly when the other evidence linking the defendant to the crime was limited. *See, e.g.*, *Graves v. Dretke*, 442 F.3d 334, 343–44 (5th Cir. 2006) (finding a *Brady* violation where, had the defense known about the other suspect, the defense could have "persuasively argued" that the other suspect had committed the murder and the evidence at trial rested "almost entirely on [the other suspect's] testimony"); *Bowen v. Maynard*, 799 F.2d 593, 610–13 (10th Cir. 1986) (holding there was a *Brady* violation when the "only identification evidence against the defendant was significantly impeachable" with the evidence of the other suspect that was withheld). But there is not a *Brady* violation every time the government does not disclose an alternative suspect, especially when the other suspect was not a particularly plausible one. *See, e.g.*, *Spence v. Johnson*, 80 F.3d 989, 998–99 (5th Cir. 1996) (holding there was no Brady violation when, even if the defense counsel had had information about the other suspect at trial, the prosecution would have been able to "exonerate[e]" the other suspect with other facts).

Here, unlike in *Graves* and *Bowen*, there was still other evidence besides Innes's testimony at trial that would have supported the verdict, namely the 1998 confessional letter describing the murder step-by-step. Given this, and considering the materiality of the *Brady* material relative to the other evidence at trial, there is not a reasonable probability that the verdict would have been

changed if Canales had known this information.  Thus, the district court correctly denied Canales habeas petition on these claims.[6]

### 5.  Trial Court Rulings, Cumulative Effect, and Jury Claims

Canales also argues that (1) the trial court's rulings violated his right to present a defense; (2) the cumulative effect of his ineffective assistance of counsel and the withholding of evidence violated his right to due process; and (3) his Sixth, Eight, and Fourteenth Amendment rights were violated because several jurors lied about their criminal background.  Canales did not separately brief these claims, instead relying on another portion of his brief in which he argued that the state court's ruling was not based on independent and adequate state grounds.  While that portion of the brief attempted to establish cause for the procedural default of these claims, Canales never argued that these alleged constitutional violations resulted in actual prejudice. "It is a well worn principle that the failure to raise an issue on appeal constitutes waiver of that argument." *See United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008) (citing *United States v. Thibodeaux*, 211 F.3d 910, 912(5th Cir. 2000).  Because Canales has waived any argument that he can establish prejudice that would excuse his procedural default, we will not address these issues on appeal.

---

[6] As it did with the *Massiah* claim, Texas again argues that the district court improperly reached the merits of this claim.  In its order denying Canales's petition, the district court explained that the standard for the prejudice element of cause and prejudice and the standard for materiality under *Brady* are the same.  The district court then stated, "Because the Court accepts the Magistrate Judge's proposed finding of no prejudice, it would be equally correct to characterize the disposition of this claim as a dismissal under the doctrine of procedural default or as a denial of the substantive claim on the merits."  Texas argues that was error, because a federal court should not reach the merits of a claim that has been procedurally defaulted unless the petitioner can prove cause and prejudice.  We agree, and so in affirming the district court's decision, we clarify that our holding rests on procedural default without reaching the merits of Canales's claim.

6.  Shackling Claim

Canales argues that his Fifth, Sixth, and Fourteenth Amendment rights were violated when he was shackled during the sentencing phase of his trial. The district court reached the merits of this claim, because it found Canales had presented it both in his direct appeal and in his first state habeas petition, and the state court adjudicated this claim on the merits.  On appeal, however, Texas argues Canales did not present his claim in state court, and so it is procedurally defaulted.

We agree with Texas that Canales did not fairly present his shackling claim in state court.  "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Whithead v. Johnson*, 157 F3d 384, 387 (5th Cir. 1998).  For a claim to have been fairly presented, the state court must "be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan v Henry*, 513 U.S. 364, 365–66 (1995) (per curiam).  Vague or fleeting references to principles of constitutional law are not enough, *see Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir. 2001), nor will the fact that the petitioner made a "somewhat similar state-law claim" suffice, *see Anderson v. Harless*, 459 U.S. 4, 6 (1982).

The Supreme Court has required a petitioner to be clear that he is making a constitutional argument in his state habeas petition before concluding that the constitutional claim was "fairly presented."  In *Picard v. Connor*, 404 U.S. 270 (1971), the habeas petitioner had argued that his indictment was improper under state law and had also obliquely referenced due process before the state's highest court.  *See id.* at 277.  But the federal appellate court had found the habeas petitioner's rights under the Equal Protection Clause had been violated.  *Id.*  The Court disagreed that the state court had had an opportunity to rule on his constitutional claim.  *Id.*  It "[could

not] fault [the state court] for failing also to consider sua sponte whether the indictment procedure denied respondent equal protection of the laws." *Id.*; *see also Duncan*, 513 U.S. at 366.

After reviewing Canales's first state habeas petition, we conclude that Canales did not "fairly present" his constitutional claim in his first state habeas petition. Canales relied primarily on Texas state court cases, arguing that his shackling was improper under *Gammage v. State*, 630 S.W.2d 309 (Tex. App.—San Antonio 1982, pet. ref'd.). While Canales quoted from *Illinois v. Allen*, 397 U.S. 337 (1970), which established that unnecessary shackling during trial was a violation of the defendant's constitutional rights, and noted that *Gammage* cited *Allen*, Canales did not cite *Allen* for its constitutional holding. Rather, he only argued that the trial court "abused its discretion and unfairly prejudiced" him when it allowed him to be shackled during the punishment phase of his trial. The state trial court's ruling on the shackling claim, which the CCA adopted, makes no indication that the court saw this issue as a constitutional one. "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). Because it does not appear that Canales's shackling claim was fairly presented in his first state habeas petition, we hold that this claim was procedurally defaulted.

Next, we consider whether Canales has established cause and prejudice to excuse the procedural default. But Canales does not argue cause or prejudice; instead, he only argues that the state court reached the merits of this claim during his first habeas petition and that it warrants relief. When he filed his reply brief, Canales was on notice that Texas had argued that his shackling claim had not been fairly presented to the state court in his first habeas petition. He knew, too, that if we held that his claim had not been fairly

presented in his first habeas petition and was instead procedurally defaulted, he would need to argue he could overcome that by showing cause and prejudice. Canales, though, did not address these arguments at all in his reply brief. Thus, his shackling claim was inadequately briefed and abandoned, and we will not reach it on appeal. *See United States v. Cothran*, 302 F.3d 279, 286 n.7 (5th Cir. 2002) (arguments not adequately briefed were considered abandoned).

## IV. CONCLUSION

We REVERSE the district court's dismissal of Canales's claim that he received ineffective assistance of trial counsel during sentencing, and we REMAND for the district court to consider whether Canales can prove prejudice. As to all other claims, we AFFIRM.