# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Nos. 09-70003, 14-70018

United States Court of Appeals
Fifth Circuit

**FILED**

September 9, 2015

Lyle W. Cayce
Clerk

STEVEN ANTHONY BUTLER,

Petitioner - Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:07-CV-2103

Before JOLLY, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

Steven Anthony Butler appeals the district court's denial of habeas relief
and its denial of his Federal Rule of Civil Procedure 60(b) motion for relief from
judgment. Butler claims he is intellectually disabled[1] and thus ineligible for

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

[1] "Intellectual disability" has become the diagnostic term to refer to what psychologists
previously referred to as "mental retardation." *See Hall v. Florida*, 134 S. Ct. 1986, 1990
(2014). The former American Association of Mental Retardation ("AAMR") has likewise
changed its name to the American Association on Intellectual and Developmental Disability

Nos. 09-70003, 14-70018

the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002). Additionally, we previously granted Butler certificates of appealability on his allegations of *Batson*[2] and *Brady*[3] violations and on one of his claims for ineffective assistance of counsel. With these claims now before us, we VACATE the dismissal of Claim 2 of Butler's federal habeas petition, Butler's ineffective-assistance-of-trial-counsel claim, and REMAND this claim for further consideration. In all other respects, we AFFIRM the district court's denial of Butler's habeas petition and Rule 60(b) motion.

## I. Background

In 1988, Butler was convicted of capital murder and sentenced to death for killing a clerk in a dry cleaning store during an armed robbery. *See Butler v. State*, 872 S.W.2d 227, 230–31 (Tex. Crim. App. 1994). Butler later confessed to committing several similar armed robberies in the months before the capital murder. According to evidence presented by the State during the sentencing phase, Butler's pattern in these armed robberies included approaching convenience store clerks and demanding money from the cash register at gunpoint, or pretending to purchase something and demanding money once the cash register was opened. Butler generally did not hold the clerk at gunpoint until no one else was in the store. Sometimes he parked his car across the street from a store, in one instance stating that he left the radio on so it would not get stolen. As Butler was exiting the scene of his last armed robbery, he

---

("AAIDD"). Accordingly, we use the appellations "intellectual disability" and "AAIDD" in place of the old terminology. *See also Williams v. Stephens*, 761 F.3d 561, 565 & n.1 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1735 (2015).

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986), forbids parties from using peremptory challenges to exclude jurors on the basis of race.

[3] Under *Brady v. Maryland*, 373 U.S. 83 (1963), the government violates a defendant's due process rights if it withholds evidence that is favorable to the defendant and material to the defendant's guilt or punishment.

shot at a sheriff's deputy who had stopped to investigate Butler's car on the side of the road.  In the ensuing chaos, Butler stole a vehicle at gunpoint and sped away, leading police on a high-speed chase until he tossed his gun out of the car window and pulled over.

Butler lost his direct appeal, *see Butler*, 872 S.W.2d at 246, and his initial state habeas petition was denied, *see Ex parte Butler*, 416 S.W.3d 863, 863 (Tex. Crim. App. 2012).  Butler filed an initial federal habeas petition in 2002, which was dismissed without prejudice to allow him to exhaust his *Atkins* claim in state court.  He then filed a successive state habeas application raising an *Atkins* claim and other issues.  *See id.*  The Texas Court of Criminal Appeals ("TCCA") remanded the case to the state district court ("trial court") for consideration of Butler's *Atkins* claim, which was denied in 2007 by order of the trial court (hereinafter "Trial Court's 2007 Order") after a seven-day hearing.[4]  *See generally id.*  During Butler's *Atkins* hearing, Dr. George C. Denkowski testified extensively for the State about Butler's intellectual and adaptive functioning capacities and about whether Butler has an intellectual disability.  The trial court extensively cited Dr. Denkowski's "credible" testimony as a basis for its findings of fact.  The TCCA affirmed the *Atkins* determination on appeal.  *See id.*  Represented by the same counsel, Butler returned to federal court to petition for habeas relief, and in September 2008 the district court denied habeas relief, granting the motion for summary

---

[4] As we explain *infra* at Part III.A.2(a), in reviewing the decision of the "state court," we review the decision of the TCCA denying Butler's state habeas petition, including his *Atkins* claim and his ineffective-assistance-of-counsel, *Batson*, and *Brady* claims.  *See Matamoros v. Stephens*, 783 F.3d 212, 220 (5th Cir. 2015); *see also Ex Parte Butler*, 416 S.W.3d at 863–64.  We will refer to the state district court which conducted Butler's habeas hearing as the "trial court."  We will refer to the state court whose decision we are reviewing, the Texas Court of Criminal Appeals, as the "TCCA."  We will refer to the U.S. District Court for the Southern District of Texas, where Butler filed his federal habeas petition, as the "district court."

judgment filed by the Director of the Texas Department of Criminal Justice.

Butler appeals the district court's order denying him habeas relief, *see Butler v. Quarterman*, 576 F. Supp. 2d 805, 810 (S.D. Tex. 2008) ("District Court's 2008 Order" or "*Butler*").  In that order, the district court noted that Butler must prove three things to show intellectual disability under *Atkins*: "(1) significantly sub-average intellectual functioning, (2) deficits in adaptive functioning, and (3) onset before age 18."  *Id.* at 810 (citing *Ex Parte Briseno*, 135 S.W.3d 1, 7 (Tex. Crim. App. 2004)).  The district court granted a certificate of appealability ("COA") on the question of whether Butler suffers from an intellectual disability because it found that "another court could resolve the issue [of Butler's intellectual functioning] differently" and "the trial court's failure to find that Butler satisfied the first criteria for [intellectual disability] was based almost entirely on the court's acceptance of Dr. Denkowski's heavily disputed opinions."  *Id.* at 816.  Yet, "[b]ecause Dr. Denkowski was qualified as an expert in [intellectual disability], and since his testimony support[ed] the state court's findings, [the district court concluded] Butler ha[d] not shown by clear and convincing evidence that the state court's findings [were] incorrect."  *Id.*

Butler appealed the District Court's 2008 Order to this court and moved to expand the COA the district court had granted on his *Atkins* claim to encompass claims of ineffective assistance of counsel, incompetence to stand trial, *Brady* violations during the penalty proceedings, and an allegedly improperly-remedied *Batson* violation.

In 2009, Butler's counsel filed a complaint with the Texas State Board of Examiners of Psychologists (the "Board") against Dr. George C. Denkowski, Ph.D., alleging unprofessional conduct in his forensic psychological assessment of Butler as the State's expert in the *Atkins* hearing.  Dr. Denkowski held a

Ph.D. in counseling psychology and practiced forensic psychology. We granted a stay pending the outcome of the complaint. In 2011, Dr. Denkowski entered into an agreement with the Board regarding Butler's complaint and others; the Board found Dr. Denkowski had failed to comply with Board rules, and potentially state and federal law, in his forensic psychology practice related to Butler's complaint. The settlement agreement also "reprimanded" Dr. Denkowski's license and prohibited him from "accept[ing] any engagement to perform forensic psychological services in the evaluation of subjects for mental retardation or intellectual disability in criminal proceedings" henceforth. Finally, the agreement fined Dr. Denkowski $7,000.

In light of the settlement agreement and its censure of Dr. Denkowski for conduct related to Butler's case, we continued the stay of appellate proceedings to allow Butler to exhaust his *Atkins* claim in state court. The TCCA reconsidered its denial of Butler's *Atkins* claim in December 2011 and remanded the case to the trial court "to allow it the opportunity to re-evaluate its initial findings, conclusions, and recommendation in light of the Denkowski Settlement Agreement." *Ex parte Butler*, 416 S.W.3d at 864.

Without holding another evidentiary hearing or allowing for further discovery, the trial court signed an order in February 2012 ("Trial Court's 2012 Order") "adopting the State's Proposed Findings of Fact and Conclusions of Law which recommended that relief be denied." *Id.* The Trial Court's 2012 Order does not substantially differ from the Trial Court's 2007 Order denying habeas relief. The Trial Court's 2012 Order removed references to Dr. Denkowski's testimony or affidavit as "credible," deleted references to reliance on his testimony in some places, and found that Butler failed to show mental retardation by a preponderance of the evidence, "even absent the testimony elicited from [Dr. Denkowski]." Butler appealed, and a majority of the TCCA

stated that "[b]ased upon the trial court's findings and conclusions and our own review, we deny relief." *Id.* at 864. A concurrence signed by three justices and a dissent signed by two justices discussed whether Butler had shown "by a preponderance of the evidence, that he has that level and degree of intellectual disability 'at which a consensus of Texas citizens would agree that a person should be exempted from the death penalty.'" *Id.* (Cochran, J., concurring) (quoting *Briseno*, 135 S.W.3d at 6); *see also id.* at 880–81 (Price, J., dissenting) (arguing the trial court did not truly revisit its 2007 Order and that "[n]either the amendments themselves nor the process by which they were made inspire confidence"). The Supreme Court denied certiorari. *Butler v. Texas*, 133 S. Ct. 1240 (2013).

With leave of this court and another stay of appellate proceedings, Butler filed a Rule 60(b)(6) motion in the district court seeking relief from its 2008 denial of his habeas petition. The district court denied the motion, finding Butler failed to show the determination as to intellectual disability in the Trial Court's 2012 Order, as affirmed by the TCCA, was unreasonable. *See Butler v. Stephens* (*Butler Rule 60(b) Opinion*), No. 4:07-CV-2103, 2014 WL 1248037, at *2 (S.D. Tex. Mar. 25, 2014). The district court noted that a petitioner must establish all three prongs of the *Briseno* inquiry to be exempted from execution by reason of intellectual disability in Texas. *Id.* at *1. On the first prong, the district court expressed doubt about the conclusion in its 2008 Order upholding the trial court's intellectual function finding. *Id.* ("This Court felt compelled to [uphold the trial court's intellectual function finding] under the extremely deferential standard of review mandated by the Antiterrorism and Effective Death Penalty Act. With the censure from the Board, Denkowski's opinions are now deserving of no weight, thus calling into serious question this Court's conclusion on the question of Butler's intellectual functioning." (citation

6

omitted)). Nevertheless, the district court denied Butler's motion because it found that "the Denkowski censure does not significantly impact the analysis of Butler's adaptive functioning," and Butler would need to show *both* intellectual *and* adaptive deficiencies to obtain habeas relief. *Id.* at *2.

Butler timely appealed to this court. We held oral argument and granted COAs regarding Butler's appeal from the denial of his Rule 60(b) motion, one of his claims for ineffective assistance of counsel, and his claims that *Batson* and *Brady* violations occurred during his trial. The parties submitted supplemental briefing on those claims, which we now consider alongside Butler's request for habeas relief.

## II. Standards of Review

We have jurisdiction to consider each of the claims before us for which either the district court or this court granted a COA. *See* 28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Butler's claim that he is intellectually disabled presents a question of fact, which was decided on its merits by the trial court and TCCA. *See Blue v. Thaler*, 665 F.3d 647, 654 (5th Cir. 2011). Therefore, under the Antiterrorism and Effective Death Penalty Act (AEDPA), as applicable here, we may only grant habeas relief if the TCCA's rejection of Butler's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). This overarching standard governs our review of "the state court's decision as a whole," that Butler lacks intellectual disability. *Blue*, 665 F.3d at 654. We give the individual factual findings supporting that decision considerable deference and will not overturn those findings merely because we might have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Matamoros v. Stephens*, 783 F.3d 212, 216 (5th Cir. 2015). Rather, "we presume the state court's factual findings are correct," and a

petitioner must present "clear and convincing evidence" to rebut the presumption. *Matamoros*, 783 F.3d at 216 & n.2; *see also Blue*, 665 F.3d at 654 (noting "[t]he clear-and-convincing evidence standard of § 2254(e)(1) . . . is 'arguably more deferential' to the state court than is the unreasonable determination standard of § 2254(d)(2)" (quoting *Wood*, 558 U.S. at 301)).

Butler challenges both the TCCA's overarching determination that he lacks intellectual disability and its individual findings that he possesses sufficiently advanced intellectual and adaptive functioning such that he is not intellectually disabled. Accordingly, he must show by clear and convincing evidence that it was unreasonable for the TCCA to conclude that he lacks the intellectual and adaptive functioning deficits that would qualify him as intellectually disabled.[5] *See, e.g.*, *Matamoros*, 783 F.3d at 216 & n.2.

Additionally, the district court twice found that Butler failed to prove the TCCA's *Atkins* conclusion was unreasonable. *See, e.g.*, *Butler Rule 60(b) Opinion*, 2014 WL 1248037, at *2; *Butler*, 576 F. Supp. 2d at 827. "In an appeal of the district court's denial of habeas relief, this court reviews the district court's findings of fact for clear error and its conclusions of law *de novo,* applying the same standard of review that the district court applied to the state court decision." *Roberts v. Thaler*, 681 F.3d 597, 603–04 (5th Cir. 2012) (citations omitted). We review a district court's denial of relief under Federal Rule of Procedure 60(b) for an abuse of discretion. *See Hernandez v. Thaler*,

---

[5] In order to establish intellectual disability under *Atkins*, Butler would also have to show the onset of significant limitations in adaptive and intellectual functioning before the age of 18. *Briseno*, 135 S.W.3d at 7. We need not decide whether Butler has satisfied this requirement because we hold that he failed to provide clear and convincing evidence that he possesses the required deficits in adaptive functioning, or that the TCCA was unreasonable to conclude he lacks those deficits. Without this showing, Butler cannot prove it was unreasonable for the TCCA to find that he is not intellectually disabled under *Atkins*. *See id.* (listing the factors necessary to show intellectual disability under Texas law).

630 F.3d 420, 428 (5th Cir. 2011).

Butler also claims that the trial judge provided an insufficient remedy for a *Batson* violation that occurred during the jury selection for his capital trial.  On direct appeal, the TCCA rejected this claim on the merits.  *See generally Butler*, 872 S.W.2d at 233 (holding the trial judge did not commit reversible error through the chosen method of remedying the *Batson* violation). To obtain habeas relief on his *Batson* claim, Butler has to show the ultimate decision of the TCCA was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  "A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts."  *Matamoros*, 783 F.3d at 215 (quoting *Gray v. Epps*, 616 F.3d 436, 439 (5th Cir. 2010)).

Finally, our COA grant encompasses two claims that were summarily dismissed by the TCCA: (1) Butler claims his trial counsel was ineffective for failing to properly investigate his mental state and for failing to raise that allegedly problematic mental state to challenge Butler's competence to stand trial and to present mitigation evidence during the punishment phase of Butler's trial; (2) Butler claims *Brady* violations prejudiced his ability to present evidence in mitigation and to challenge aggravation evidence during the punishment phase.  The district court found that Butler procedurally defaulted these claims.  *See Butler*, 576 F. Supp. 2d at 828.  We agree, as to Butler's ineffective-assistance-of-trial-counsel ("IATC") claim.   Butler thus must show cause and prejudice for his default to receive merits consideration by a federal court. *See generally Trevino v. Thaler*, 133 S. Ct. 1911, 1917 (2013).

9

Nos. 09-70003, 14-70018

We need not decide whether Butler's *Brady* claim is procedurally defaulted because we conclude he cannot show the alleged violations caused him prejudice to overcome any default or are sufficiently material to prove this claim on the merits; therefore, Butler's *Brady* claim fails.

### III.  Discussion

#### A.  *Butler's* Atkins *Claim*

Butler's habeas petitions before the state and federal courts argue he cannot be executed because he has an intellectual disability.  In *Atkins*, "the Supreme Court held that the Eighth Amendment forbids the execution of [intellectually disabled] persons," but it "le[ft] to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon their execution of sentences." *Maldonado v. Thaler*, 625 F.3d 229, 232 (5th Cir. 2010) (citing *Atkins*, 536 U.S. at 317).  In *Briseno*, 135 S.W.3d at 7, the Texas Court of Criminal Appeals followed the AAMR's (now AAIDD's) definition[6] and "require[d] three elements for a finding of [intellectual disability]:  (1) significantly subaverage intellectual functioning (generally, a full-scale IQ score of 70 or below); (2) deficits in adaptive functioning; and (3) onset before age 18." *Maldonado*, 625 F.3d at 233 (citing *Briseno,* 135 S.W.3d at 7)).

As explained below, we hold Butler has failed to show by clear and convincing evidence that it was unreasonable for the TCCA to conclude that he lacks the required adaptive functioning deficits.  *See Matamoros*, 783 F.3d at

---

[6] Although some states set their intellectual disability criteria by statute, Texas has not done so.  However, *Briseno* found the AAMR's (now AAIDD's) definition similar to that in Texas Health & Safety Code § 591.003(13), now codified at § 591.003(7-a): "'Intellectual disability' means significantly subaverage general intellectual functioning that is concurrent with deficits in adaptive behavior and originates during the developmental period."  TEX. HEALTH & SAFETY CODE ANN. § 591.003(7-a) (West Supp. 2014); *Briseno,* 135 S.W.3d at 6–8. *Briseno* adopted this definition for Texas, in conjunction with a separate list of factors courts should consider when making adaptive behavior findings.  *Briseno*, 135 S.W.3d at 7–8.

216 & n.2; *Briseno*, 135 S.W.3d at 7.  We therefore need not and do not reach whether Butler has shown the TCCA was also unreasonable in finding he lacks the required intellectual functioning deficits.  *See, e.g., Henderson v. Stephens*, 791 F.3d 567, 580 (5th Cir. 2015); *see also Maldonado*, 625 F.3d at 233 (citing *Briseno,* 135 S.W.3d at 7)).

1.  Butler's Rule 60(b) Motion

The State argues in passing that we "should consider the Rule 60(b)(6) issue abandoned by Butler" because he "failed to brief the Rule 60(b)(6) issue" in supplemental briefing.  We conclude the matter is adequately briefed, and we proceed to the merits.

2.  The Adaptive Function Findings

The Texas Health and Safety Code defines adaptive behavior as "the effectiveness with or degree to which a person meets the standards of personal independence and social responsibility expected of the person's age and cultural group."  TEX. HEALTH & SAFETY CODE ANN. § 591.003(1) (West 2010). Finding significant limitations in adaptive functioning is one of the three criteria a petitioner must meet to show intellectual disability under *Atkins* in Texas.  *Briseno*, 135 S.W.3d at 6–7.  The trial court found that Butler failed to show deficits in adaptive behavior.  The TCCA denied Butler's *Atkins* claim "[b]ased upon the trial court's findings and conclusions and [its] own review." *Ex parte Butler*, 416 S.W.3d at 864.  Butler argues the finding of the TCCA and trial court was unreasonable on multiple grounds.

Primarily, Butler asserts that Dr. Denkowski's opinions on intellectual functioning and dubious practices tainted the trial court's determination of adaptive functioning.  According to Butler, this influence led the trial court to make that determination against established scientific principles by: "fail[ing] to (a) examine both strengths and limitations, (b) consider[ing] and [giving]

11

overriding weight to a few examples of atypical behavior by Mr. Butler rather than focusing on his typical behavior, and (c) consider[ing] his criminal behaviors as showing adaptive strengths." In Butler's view, *Atkins* and *Hall v. Florida*, 134 S. Ct. 1986 (2014), mandate that courts closely follow established scientific and clinical principles when making findings on adaptive function, and the trial court did not do so when it disregarded the Vineland Adaptive Behavior test of Butler's adaptive skills given by Dr. Denis Keyes, Butler's expert. *See Hall*, 134 S. Ct. at 1990, 1995 (holding Florida's mandatory cutoff at an IQ score of 70 for considering a petitioner's claim for intellectual disability "disregard[ed] established medical practice"). Butler contends that the trial court exacerbated this error by disregarding testimony from Butler's friends and family about his adaptive limitations, influenced by Dr. Denkowski's belief that this testimony is not reliable.

Even excluding Dr. Denkowski's testimony on our own review of the evidence, *see Matamoros*, 783 F.3d at 220, we conclude that we cannot grant relief with respect to the trial court's methods in examining Butler's strengths *and* limitations, considering his criminal behaviors, or relying on the *Briseno* factors. Neither *Atkins* nor *Hall* mandates that courts scrupulously follow clinical guidelines. Instead, the Supreme Court allows states to set their own definitions of intellectual disability. The TCCA has set the standard for Texas by adopting the definition of intellectual disability from the AAIDD, *Briseno*, 135 S.W.3d at 7, and by enumerating seven additional factors for courts to consider, *see id.* at 8–9.[7]

---

[7] The factors are: "[1] Did those who knew the person best during the developmental stage—his family, friends, teachers, employers, authorities—think he was [intellectually disabled] at that time, and, if so, act in accordance with that determination? [2] Has the person formulated plans and carried them through or is his conduct impulsive? [3] Does his conduct show leadership or does it show that he is led around by others? [4] Is his conduct in response to external stimuli rational and appropriate, regardless of whether it is socially

We have explicitly addressed arguments attacking the *Briseno* factors as insufficiently tied to clinical standards, even after *Hall* was decided, holding:

> Unlike the [IQ-score] cutoff at issue in *Hall*, the *Briseno* factors do not conflict with *Atkins*. . . . *Atkins* says nothing about what kind of evidence should be considered when determining whether a defendant's significantly subaverage general intellectual functioning meaningfully limits his adaptive functioning. That question has been left explicitly to the states, and the definition adopted by Texas in *Briseno*, including the *Briseno* factors, in no way departs from any of the Court's pronouncements.

*Mays v. Stephens*, 757 F.3d 211, 218–19 (5th Cir. 2014) (citing *Atkins*, 536 U.S. at 308 n.3, 318), *cert. denied*, 135 S. Ct. 951 (2015). Therefore, the trial court permissibly relied on factors enumerated by *Briseno* and approved by this court in making findings regarding Butler's adaptive functioning. *See, e.g.*, *Briseno*, 135 S.W.3d at 8–9; *Matamoros*, 783 F.3d at 218 & n.6 (noting that the *Briseno* factors have been criticized as "lack[ing] a scientific basis" but upholding their use, as this court has "previously held that *Briseno* is a constitutionally permissible interpretation and application of *Atkins*"). This includes its consideration of Butler's adaptive strengths alongside his limitations. *See Henderson*, 791 F.3d at 586 ("Under *Briseno*, the TCCA was free to weigh *all* of the evidence, not just the evidence of [the petitioner's] limitations and [his] expert witness's testimony, in making its factual determination . . . ."); *Williams v. Quarterman*, 293 F. App'x 298, 313–14 (5th Cir. 2008)[8] (noting courts may consider adaptive strengths in this analysis and finding no clear

---

acceptable? [5] Does he respond coherently, rationally, and on point to oral or written questions or do his responses wander from subject to subject? [6] Can the person hide facts or lie effectively in his own or others' interests? [7] Putting aside any heinousness or gruesomeness surrounding the capital offense, did the commission of that offense require forethought, planning, and complex execution of purpose?" *Id.* at 8–9.

8  Although *Williams* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

error in the district court's finding of no significant adaptive limitations (citing *Clark v. Quarterman*, 457 F.3d 441, 447 (5th Cir. 2006)).  *Briseno* also approved consideration of a person's criminal behavior in examining adaptive functioning limitations, and we have said that practice does not contravene *Atkins* or *Hall*.  *See generally Chester v. Thaler*, 666 F.3d 340, 347 & n.1, 349 (5th Cir. 2011); *Briseno*, 135 S.W.3d at 8–9.  Finally, even if we disagreed with the focus of the trial court on some evidence over other evidence or might have made different credibility determinations and findings, that disagreement would not be sufficient to grant habeas relief as to the TCCA's ultimate rejection of Butler's petition absent clear and convincing evidence to the contrary of its factual findings.  *See Kinsel v. Cain*, 647 F.3d 265, 270 & nn.18–19 (5th Cir. 2011) ("recognizing that credibility determinations in particular are entitled to a strong presumption of correctness" and that a petitioner must show they were erroneous by clear and convincing evidence (citing *Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) and *Miller-El*, 537 U.S. at 340).[9]

*(a)  Dr. Denkowski's Influence*

In an attempt to proffer such clear and convincing evidence, Butler seeks to discredit several areas of the trial court's findings as tainted by Dr. Denkowski's influence.  In other cases involving Dr. Denkowski, we have attempted to set aside Dr. Denkowski's problematic influence by disregarding his testimony and examining whether, on the rest of the evidence, a petitioner

---

[9] The same applies to the trial court's rejection of the Vineland exam results. Although the trial court relied in part on Dr. Denkowski's testimony to reject Dr. Keyes's interpretation of those results, it also relied on its finding that Dr. Keyes was not credible and on Dr. Keyes's own comment that Butler's score on the exam was "spuriously low."  Thus, as Butler suggests, we will consider the information Butler's friends provided to Dr. Keyes during interviews for the exam, but we do not find clear and convincing evidence in this record that the trial court unreasonably disregarded Dr. Keyes's interpretation of the results of the Vineland exam.  *See Kinsel*, 647 F.3d at 270.

met their burden to show the state court's determination was unreasonable. *See, e.g.*, *Maldonado*, 625 F.3d at 236 ("[The petitioner] is not entitled to habeas relief because even disregarding [Dr. Denkowski's] testimony, he cannot meet his burden . . . ."); *Matamoros*, 783 F.3d at 220. In *Matamoros*, we took a two-pronged approach. First, we held that we would view the TCCA as the relevant decision maker, excising some of Dr. Denkowski's influence because the TCCA "explicitly stated that it relied [on] . . . [its] own review" in denying the state habeas petition. *Matamoros*, 783 F.3d at 220 (citation omitted). Second, in the alternative, we specified that we reviewed "the state court's *decision*, not the written opinion explaining that decision." *Id.* (citation omitted); *see also Maldonado*, 625 F.3d at 239. In *Matamoros*, this approach led us to "conduct our own review of the evidence (excluding Dr. Denkowski's testimony) and determine whether [the petitioner showed] clearly and convincingly that the [TCCA's] *decision*—that [petitioner] did not meet his burden of proof—was unreasonable." 783 F.3d at 220. We will follow the same approach in this case.

In this case, as in *Matamoros*, the TCCA "den[ied] relief" based both upon the trial court's findings "and [its] own review." *Ex Parte Butler*, 416 S.W.3d at 864. Additionally, on reconsideration, given Dr. Denkowski's censure, the trial court found that Butler failed to show intellectual disability by a preponderance of the evidence, "even absent the testimony elicited by Dr. George Denkowski during the habeas proceedings." *Id.* at 881 (Price, J., dissenting). As highlighted by the TCCA's dissenting justices, the trial court in the Trial Court's 2012 Order gave a disturbingly cursory consideration to the new information about Dr. Denkowski and seemed to continue to rely on his discredited methods.[10] *Id.* at 880–81 (Price, J., dissenting) (criticizing the

---

[10] *Id.* at 880 (Price, J., dissenting) (noting the trial court reportedly "simply announced from the bench that it would not reconsider its *Atkins* ruling," invited the State to submit a

Trial Court's 2012 Order as "an only-slightly-reworked version of the original" 2007 Order that did little more than delete the word "credible" before descriptions of Dr. Denkowski's testimony, such that "[n]either the amendments themselves nor the process by which they were made inspire confidence"). While we do not countenance the trial court's conduct on remand, we conclude that—even without Dr. Denkowski's testimony—Butler has not met his AEDPA burden with respect to adaptive functions.[11]

*(b) Findings Regarding Adaptive Behavior Skill Areas*

In the Trial Court's 2007 and 2012 Orders, it found that Butler lacks the required adaptive functioning deficits after considering the *Briseno* factors and the AAIDD definition of intellectual disability and based on testimony from Dr. Denkowski, Dr. Denis Keyes (Butler's expert), and Butler's friends and family members. The TCCA affirmed the Trial Court's 2012 Order, so that is the decision we review. In making its adaptive function findings, the trial court relied primarily on testimony from Butler's friends and family about his habits, actions, and adaptive abilities, as well as on observations of Butler during the investigation of his crimes, during his trials, and in prison. Those findings inherently involved credibility determinations and assessments of live witnesses, which Butler can only overcome in this court by showing clear and convincing evidence that those determinations were erroneous. *See Kinsel*, 647 F.3d at 270. He has failed to meet that burden. The record reveals considerable evidence, discounting Dr. Denkowski, on both sides of the

---

new set of proposed facts and conclusions, did not invite Butler to do the same, and signed the State's proposed facts and conclusions as its new order, "without a single change").

[11] Although we have thoroughly reviewed the evidence in the record, we will not attempt to summarize it in full here. We will only refer to portions of it as necessary.

equation.   In light of this conflicting evidence, we do not find clear and convincing evidence that the TCCA's determination was unreasonable.

Following *Briseno*'s approach, the trial court analyzed Butler's level of adaptive functioning based on the AAMR diagnostic manual's definition of adaptive behavior deficits as existing "when an individual has significant limitations in at least two of ten skill areas."   The ten skill areas include "communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work." *Matamoros*, 783 F.3d at 217 (quoting *Atkins,* 536 U.S. at 308 n.3).[12]   The trial court found strengths in each of these areas that support the TCCA's decision.

In functional academics, the trial court found that Butler subscribed to publications to read in his prison cell and was able to read, write, and order items from the prison commissary without exceeding his balance.   Butler communicated proficiently when he confessed to police officers and when he testified in court, he read the newspaper and kept clippings about his crimes, and he gave orders to his victims during the robberies, joked with his fiancée, and effectively explained his absence from duty in the National Guard. Regarding social skills, community use, and self-direction, the trial court found Butler spent time helping elderly neighbors and children, dated and became engaged after a long-term relationship, was described by his fiancée as a "class clown" who was "tender, soothing, and made [her] laugh," and was previously described by his father as "a normal, active, and trustworthy man."   Butler also

---

[12]    *See also* AMERICAN ASSOCIATION OF MENTAL RETARDATION, MENTAL RETARDATION: DEFINITION, CLASSIFICATION, AND SYSTEMS OF SUPPORTS 76–77, 81 (10th ed. 2002) [hereinafter "AAMR Manual"]; AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 49 (rev. 4th ed. 2000) [hereinafter "DSM-IV"] (endorsing the two-of-ten subcategories adaptive functioning framework under its diagnostic criteria for what was then referred to as mental retardation).

possessed and drove a car as a teenager and was able to understand and follow traffic rules. Butler sought out jobs and completed basic training in the National Guard, which the trial court found involves "listening to and following instructions, learning how to fire, clean, assemble and dissemble a firearm, keeping one's uniform orderly, and keeping one's bunk area clean and neat." Butler planned and carried out schemes through his crimes, and he avoided capture by watching the news and changing out his license plate to avoid detection. In his daily life, the trial court found Butler could heat up his own meals, drive to and from work and other places, and care for himself in a confinement setting with health care and personal care items found in his cell.

Evidence before the trial court also suggested limitations in Butler's adaptive functioning, but it does not clearly and convincingly outweigh the evidence that Butler lacks the deficits required by *Atkins* and *Briseno*. For example, friends and family members reported that Butler had difficulty managing money, including skills like opening a bank account, budgeting, checking for change following a purchase, paying bills, and balancing a checkbook. Butler demonstrated little knowledge of dictionaries and encyclopedias in high school and scored poorly in a class involving life skills and finances. Friends often ordered food for him at restaurants and helped him to apply for jobs and find lodging, transportation, and furniture. Friends and family members said they often had to explain things to Butler repeatedly before he understood. A speech and language pathologist testified that Butler's testimony at another trial was similar to that of an 8-to-10-year-old child with language impairments and "consistent with the speech of an adult with intellectual disability." Witnesses described Butler as a shy, withdrawn follower who was made fun of in school, could not play sports because he could not comprehend the rules or strategy, avoided conflicts because he could not

resolve them, and had difficulty comprehending jokes and romantic commitments. The trial court questioned the credibility of some of the witnesses; in any event, the evidence in support of Butler's adaptive function claims was not sufficient to overcome the evidence against those claims in light of the deferential standard we apply.

In short, we have little doubt that the Trial Court's 2007 and 2012 Orders were weakened by reliance on Dr. Denkowski's testimony. But excising that testimony—and findings dependent on it—leaves behind evidence that supports the TCCA's finding that Butler lacks significant deficits in adaptive functioning. Under AEDPA, Butler has not met his burden to show the TCCA's decision to dismiss his *Atkins* claim was unreasonable. *See* 28 U.S.C. § 2254(d)(2); *Matamoros*, 783 F.3d at 220.

*(c)* Briseno*'s Constitutionality after* Brumfield v. Cain

Butler urges in supplemental briefing that the Supreme Court's recent decision in *Brumfield v. Cain* supports a rejection or more careful scrutiny of the *Briseno* factors in favor of a more clinical approach. *See* 135 S. Ct. 2269, 2280–82 (2015) (citing clinical standards and disagreeing with a state habeas court's reliance on considerations similar to the *Briseno* factors to deny the petitioner's request for an evidentiary hearing). Butler attacks each of the *Briseno* factors as lacking any basis in clinical standards, instead being based on unscientific evidence submitted in the underlying state habeas case in *Briseno*. The factors do not accurately capture whether an individual is intellectually disabled, Butler avers, because they "begin with a false dichotomy" between intellectual disability and a personality disorder, which is an unscientific assumption.

The Supreme Court in *Brumfield* did not indicate a rejection of the *Briseno* factors as a whole. The Court simply disagreed with the application of

certain similar considerations in that case, which prevented a petitioner from receiving an evidentiary *Atkins* hearing when there was at least some indication he might have an intellectual disability. *Id.* at 2281 (observing it was "critical to remember" that to obtain an evidentiary hearing, the petitioner "was not obligated to show that he was intellectually disabled, or even that he would likely be able to prove as much," only that he could "raise a reasonable doubt as to his intellectual disability" (citation omitted)). As we recently held in *Henderson*, *Brumfield* "does not cast any doubt on the constitutionality of the *Briseno* standard. Unlike the petitioner in *Brumfield*, [Butler] had an evidentiary hearing at which he presented expert testimony and other evidence in support of his *Atkins* claim." 791 F.3d at 586.

We hold that under *Brumfield*, as before, Butler has failed to show by clear and convincing evidence that the TCCA was unreasonable to find that he lacks the required adaptive functioning deficits. This is fatal to his *Atkins* claim; therefore, we AFFIRM the district court's denial and dismissal of Butler's *Atkins* claim. *See Butler*, 576 F. Supp. 2d at 827.

## B.  *Butler's* Batson *Claim*

Butler also claims that the trial judge in his capital trial erred by providing an inadequate remedy for a *Batson* violation, and that the TCCA's decision upholding that remedy on appeal was "contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. 28 U.S.C. § 2254(d)(1); *see also Matamoros*, 783 F.3d at 215. *Batson* held that a party may not exercise a peremptory challenge on the basis of a juror's race. *Batson v. Kentucky*, 476 U.S. 79 (1986). Butler protests that, after the trial court found the prosecution's peremptory challenge violated *Batson*, it implemented a remedy that was not mentioned by the Supreme Court in *Batson* and which contravenes the spirit of *Batson* by effectively rewarding the

prosecution for its impermissible peremptory strike.

In *Batson*, the Supreme Court acknowledged two acceptable methods of ameliorating the harm from an unlawful challenge—reinstating the improperly stricken juror or discharging the venire and selecting a new jury from an entirely new panel. *Id.* at 99 n.24. Yet, the Court left trial courts the discretion to fashion an appropriate remedy:

> We decline . . . to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges.
> . . . .
> In light of the variety of jury selection practices followed in our state and federal trial courts, we make no attempt to instruct these courts how best to implement our holding today. For the same reason, we express no view on whether it is more appropriate in a particular case, upon a finding of discrimination against black jurors, for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case, or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire . . . .

*Id.* at 99 & n.24 (citations omitted).

During jury selection for Butler's capital trial, the trial court divided all prospective jurors into smaller groups. *See Butler*, 872 S.W.2d at 231, 233. The *Batson* issue arose during the voir dire of the fourth group. *Id.* at 231. One member of the group was selected (Jimmie Lewis), but the prosecution exercised a peremptory challenge on an African-American member of the panel, Delores Hadnott. *Id.* at 231–33. Butler's counsel objected that this strike by the prosecution was exercised in a racially discriminatory manner. *Id.* at 231–32. The trial court sustained the objection. After much back and forth during which Butler's attorney argued that the entire "array" of prospective jurors (all summoned jurors, not just this small group) should be excused or that Hadnott should be seated, the trial judge dismissed the entire small group (not all summoned prospective jurors), unseating Lewis and also

excusing Hadnott. *Id.* at 232–33. Three jurors selected from previous small groups, or mini panels, remained on the jury. *Id.* The judge also returned the used peremptory strike to the State. *Id.*

On direct appeal the TCCA found the trial court's remedy constitutionally sufficient under *Batson*, on the merits. *See id.* at 233. The district court likewise found that "[w]hile the remedy chosen by the trial court may not have been ideal, the trial court's *Batson* remedy was not 'so patently incorrect as to be unreasonable.'" *Butler*, 576 F. Supp. 2d at 831 (quoting *Gardner v. Johnson,* 247 F.3d 551, 560 (5th Cir. 2001)).

Under AEDPA, we cannot address this issue de novo; instead, we ask whether the trial court's chosen remedy and the TCCA's affirmance of that remedy directly conflict with a prior decision of the Supreme Court or reach a different conclusion than the Supreme Court on materially indistinguishable facts. *See Matamoros*, 783 F.3d at 215. They do not. Accordingly, we leave the larger question of *Batson* remedies to another day and AFFIRM the district court on this point. *See* 28 U.S.C. § 2254(d)(1); *Matamoros*, 783 F.3d at 215.

*C. Butler's* Brady *Claim*

Butler also requests habeas relief because he claims the prosecution violated *Brady v. Maryland* by withholding evidence that would have undermined the prosecution's presentation of aggravating circumstances during the punishment phase of his capital trial. *See* 373 U.S. 83, 87 (1963). *Brady* prohibits the suppression of favorable impeachment or exculpatory evidence by the prosecution. *Id.*; *Canales v. Stephens*, 765 F.3d 551, 574 (5th Cir. 2014).

To prove a *Brady* violation on the merits, Butler must show "(1) the evidence at issue, whether exculpatory or impeaching, [was] favorable to [Butler]; (2) "[the] evidence [was] suppressed by the State, either willfully or

inadvertently; and (3) prejudice . . . ensued." *Canales*, 765 F.3d at 574 (quoting *Strickler v. Greene,* 527 U.S. 263, 281–82 (1999)). "Unless suppressed evidence is 'material for *Brady* purposes, [its] suppression [does] not give rise to sufficient prejudice to overcome [a] procedural default.'" *Banks v. Dretke*, 540 U.S. 668, 698 (2004) (quoting *Strickler*, 527 U.S. at 282). In other words, "[t]he prejudice component [of a procedurally-defaulted *Brady* claim] is the same as materiality for *Brady* purposes." *Canales*, 765 F.3d at 574 (citing *Banks*, 540 U.S. at 691). In determining materiality,

> courts should not simply ask whether, "after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions." Instead, the proper inquiry is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."

*Id.* (citations omitted) (quoting *Strickler*, 527 U.S. at 290). As this court has observed, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *United States v. Brown*, 650 F.3d 581, 588 (5th Cir. 2011) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

"The suppressed evidence need not be admissible to be material under *Brady*; but it must, somehow, create a reasonable probability that the result of the proceeding would be different." *Id.* To show a reasonable probability of a different outcome, "the 'likelihood of a different result must be substantial, not just conceivable.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)). We assess the materiality of suppressed evidence collectively. *Id.*; *see also Canales*, 765 F.3d at 574 (citing *Kyles*, 514 U.S. at 436).

"We need not decide whether Butler procedurally defaulted his *Brady* claim because, regardless of any default, Butler would have to show the alleged

*Brady* violations were material (or prejudicial) to succeed on the merits and overcome procedural default. *See Canales*, 765 F.3d at 574–75 (citing *Banks*, 540 U.S. at 691); *cf. Hooks v. Thaler*, 394 F. App'x 79, 82 n.3 (5th Cir. 2010) ("Because we hold that [the petitioner] has failed to satisfactorily demonstrate ineffective assistance, we need not address whether [he] properly exhausted his claim in the state courts." (citing *Richardson v. Quarterman,* 537 F.3d 466, 474 n.3 (5th Cir. 2008))). Even assuming that the information Butler describes was not disclosed, we conclude that the allegedly suppressed information was not "material" within the meaning of *Brady*.

Three groups of allegedly suppressed evidence related to witness testimony establishing Butler's culpability in other crimes used as aggravating factors in his sentencing. While a *Brady* violation can be premised on the suppression of impeachment evidence, the evidence in question here would not have provided impeachment sufficient to "undermine confidence in the outcome." *Canales*, 765 F.3d at 568; *see also Banks*, 583 F.3d at 311. With respect to Gwen Blackwell, who was a witness to a robbery, Madonna Benoit, who was a witness to a different robbery and attempted murder, and Winnie Silcox, who was a witness to yet another robbery and sexual assault, Butler confessed to all of these crimes. His confessions and other evidence the prosecution presented render the alleged impeachment evidence insufficient to put the whole case in such a different light as to undermine confidence in whether Butler received a fair trial, "resulting in a verdict worthy of confidence." *Brown*, 650 F.3d at 588; *see also Canales*, 765 F.3d at 574. Thus, even assuming arguendo the allegedly suppressed evidence would bear on these witnesses' credibility, Butler has failed to establish materiality.

The final item claimed as suppressed *Brady* material is information contained in a series of published newspaper articles impugning one Louisiana

law enforcement officer and the sheriff's office where he and another officer worked during the general time frame when these officers investigated Butler. We agree with the State that newspaper articles published about this law enforcement office and one of the officers *after* Butler's trial do not constitute "suppressed" *Brady* materials.  To the extent the prosecution is imputed with knowledge about the underlying information, it is too vague and attenuated to Butler's investigation to be material.  Accordingly, we conclude that there is no need to remand the *Brady* analysis to the district court and we AFFIRM the district court's denial of relief on this basis.

## D.  Butler's Ineffective Assistance Claim

We also granted a COA on Butler's claim that his trial counsel was ineffective for failing to investigate and raise: (1) Butler's competence to stand trial, and (2) mitigation evidence regarding Butler's mental state during the penalty phase of his capital trial.  The district court rejected this claim as procedurally defaulted.  *See Butler*, 576 F. Supp. 2d at 828.  The claim was not raised in Butler's initial state habeas proceeding and, relying on then-current precedent, the district court held that Butler could make no claim for ineffective assistance of *state habeas counsel* for failure to raise the *ineffective-assistance-of-trial-counsel* claim.  *Id.* at 829–30 (citing *Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991) (holding there is no constitutional right to an attorney, much less an effective attorney, in state post-conviction proceedings) and *Martinez v. Johnson*, 255 F.3d 229, 241 (5th Cir. 2001) ("[I]neffective assistance of habeas counsel cannot provide cause for a procedural default.")).

After the district court's decision, the Supreme Court held that defendants convicted in Texas may attempt to demonstrate that the ineffectiveness of state habeas counsel is cause for failure to raise an IATC claim during state habeas proceedings.  *See Martinez v. Ryan*, 132 S. Ct. 1309,

25

1318–19 (2012) (holding habeas petitioners may show cause for such default in specific circumstances in states that require petitioners to raise IATC claims in initial state habeas proceedings, rather than on direct appeal); *Trevino*, 133 S. Ct. at 1915, 1921 (holding *Martinez* applies to inmates convicted in Texas, because Texas functionally requires petitioners to raise IATC claims in initial state habeas proceedings).    Therefore, if Butler's IATC claim has been procedurally defaulted, whether Butler can show cause and prejudice under the new standards of *Martinez* and *Trevino* must be ascertained.

1.  Procedural Default

When considering state prisoners' habeas petitions under 28 U.S.C. § 2254, federal courts may not consider the merits of claims that have been dismissed by state courts on state-law procedural grounds which are adequate and independent of the federal, constitutional merits of the claims.    *See Balentine v. Thaler*, 626 F.3d 842, 851 (5th Cir. 2010) (citing *Coleman*, 501 U.S. at 729).    Therefore, the first question we must answer is whether the TCCA's dismissal of Buter's IATC claim was based on such an adequate and independent state-law ground, or whether the TCCA's dismissal of that claim is interwoven with federal law such that a federal court may review it on the merits.    If this claim has been procedurally defaulted, Butler must also show cause and prejudice for his failure to present this claim in his first state habeas application.

Butler presented the IATC claim in his second state application for habeas corpus.    After the state trial court denied Butler's IATC claim, along with his second habeas application, the TCCA dismissed the claim.    *Ex parte Butler*, No. 41,121-02 (Tex. Crim. App. Sept. 15, 2004) (unpublished).    In doing so, the TCCA found Butler's *Atkins* claim in his second state petition "satisfie[d] the requirements of Article 11.071 § 5(a), TEX. CODE CRIM. PROC.,"

but that "[t]he remaining allegations [in his petition did] not satisfy an exception and [were] dismissed as an abuse of the writ." *Id.* at 2.

The TCCA's unpublished order thus dismissed Butler's IATC claim without specifying whether it did so based on "a state-law procedural ground," or on the merits in a manner dependent on federal law. *See Rocha v. Thaler*, 626 F.3d 815, 820 (5th Cir. 2010). If the TCCA's rejection of Butler's claim was based "on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal" apart from the federal, constitutional merits of the claim, that claim has been procedurally defaulted. *Id.* at 820–21; *Canales*, 765 F.3d at 564. In this case, Butler claims the TCCA dismissed his IATC claim "based on a state procedural ground that was not independent of the merits of [his] constitutional claim[]."[13]

When, as here, "the adequacy and independence of any possible state law ground is not clear from the face of the [state court] opinion," this court must attempt to discern the grounds on which a claim was dismissed. *See Canales*, 765 F.3d at 564 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983)). Unless it "fairly appear[s] that the state court rested its decision primarily on federal grounds," we do not accept as "the most reasonable explanation . . . that the state judgment rested on federal grounds." *Id.* (quoting *Coleman,* 501 U.S. at 737). Instead, we look beyond the dismissal order:

> When the dismissal is silent, this [c]ourt looks to the arguments made in state court to try to determine whether the dismissal was based on independent and adequate state law or whether instead it relied on or was interwoven with federal law.

---

[13] No one disputes that a dismissal for "abuse of the writ" by the TCCA constitutes an adequate basis for decision. "A procedural rule is adequate when it is 'firmly established and regularly followed,' even if there is an occasional aberrant state court decision." *Balentine*, 626 F.3d at 856 (quoting *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991)). "We have previously held that the [TCCA] regularly enforces the Section 5(a) requirements." *Id.* at 856–57.

*Id.* at 565 (citation omitted) (quoting *Balentine*, 626 F.3d at 854–56).

Interpreting the TCCA's "boilerplate dismissal for an abuse of the writ" is complicated because it did so under Section 5 of Article 11.071 of the Texas Code of Criminal Procedure, and any of the three grounds for dismissal of subsequent writs in § 5(a) may involve merits determinations that are not independent of federal law.[14]   *Id.*; *see also, e.g.*, *Rocha*, 626 F.3d at 835–39; *Balentine*, 626 F.3d at 854–55.   Only § 5(a)(1) and (3) are relevant here, since Butler does not challenge his guilt through his IATC claim.   *See Balentine*, 626 F.3d at 855 (noting § 5(a)(2) was "inapplicable" when a petitioner alleged ineffective investigation and presentation of mitigation evidence).   We have previously noted that, in attempting to determine whether a subsequent application is barred under § 5(a)(1), the TCCA engages in a two-step analysis. The TCCA asks whether:

> 1) the factual or legal basis for an applicant's current claims [were] unavailable as to all of his previous applications; and 2) the specific facts alleged, if established, would constitute a constitutional violation that would likely require relief from either the conviction or sentence.

*Id.* at 853 (quoting *Ex parte Campbell,* 226 S.W.3d 418, 421 (Tex. Crim. App. 2007)).   At the first step, dismissing a claim because its factual or legal basis was previously available would be a determination based on adequate and independent state procedural grounds.   *Id.*   Dismissing a claim that cannot satisfy the second step of the analysis would involve a "question of federal constitutional law."   *Id.* (citation omitted).

Here, the TCCA's order was silent, only specifying that Butler's claims were dismissed for failing to "satisfy an exception."   Therefore, as in *Balentine*,

---

[14]  The available "exceptions" are contained within Article 11.071 § 5(a) of the Texas Code of Criminal Procedure.

Butler "would have needed to present sufficient specific facts to support one of the following" in his second state habeas petition in order for it to fairly appear to us that the TCCA's dismissal of this claim was interwoven with its federal merits:

> (1) the [IATC claim] ha[s] not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the [IATC] claim was unavailable on the date the applicant filed the previous application;
> . . . .
> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.

*Id.* at 855 (citing § 5(a)(1), (3)).

Butler argued in his second state habeas petition that his IATC claim should be considered because he was prevented from conveying necessary facts to his state habeas counsel due to his incompetence at the time the first petition was filed. Butler also argued that his incompetence destroyed the attorney-client relationship under agency principles, such that his first state habeas petition was not effective. Butler did not cite any authority directly on point for the latter argument. To support his argument that incompetence should prevent procedural default of state habeas claims, Butler cited *Ex parte Mines*, in which the TCCA held that it was neither constitutionally nor statutorily required that a death-row habeas petitioner "be competent to assist his counsel in filing an application for habeas corpus relief." 26 S.W.3d 910, 911, 914 (Tex. Crim. App. 2000) (en banc). In *Ex parte Mines*, the TCCA appeared to leave open the possibility that a petitioner's "alleged incompetency might be grounds for the untimely raising of an issue if it could not have been raised earlier

because of that incompetency." *Id.* at 916 (quoting *People v. Kelly*, 822 P.2d 385, 414 (Cal. 1992)); *see also id.* at 916 n.33 (collecting cases on either side of this issue). Butler argued this portion of the opinion supported considering his IATC claim on the merits, despite its omission from his first habeas petition.

As in *Balentine*, we do not believe the TCCA "silently accepted one or more" of Butler's novel arguments to disregard the prior availability of his IATC claim "and then, with equal silence, reached the merits of his [IATC] claim" before rejecting it on the merits, again, in silence. *Balentine*, 626 F.3d at 855. To state a claim for relief under § 5(a)(3), Butler would have had to show that his IATC claim made him "ineligible for the death penalty," along the lines of the "fundamental miscarriage of justice" exception in federal habeas law, or potentially that "no rational juror would have answered the mitigation special issue in the State's favor" absent the claimed IATC error. *Id.* at 856 (quoting *Sawyer v. Whitley*, 505 U.S. 333 (1992), *Rocha*, 619 F.3d at 402–03, and *Ex parte Blue,* 230 S.W.3d 151, 159–60, 161 n.42 (Tex. Crim. App. 2007)). As in *Balentine*, the TCCA's order here did not appear to "reach the merits of . . . ineligibility for the death penalty." *Id.* Butler's IATC claim in his second state habeas petition thus did not meet the requirements for either § 5(a)(1) or (3). Accordingly, we hold that the TCCA rejected Butler's IATC claim based on adequate and independent state grounds and that Butler's IATC claim was procedurally defaulted. *See id.* at 855–56.

2.  Cause and Prejudice for the Default

Although Butler procedurally defaulted his IATC claim, he argues he can demonstrate cause and prejudice for the default and that this court should remand the IATC claim to the district court to determine whether it has "some merit" under *Martinez* and *Trevino*. *See Martinez,* 132 S. Ct. at 1318 ("To overcome [procedural] default, a prisoner must also demonstrate that the

underlying [IATC] claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." (citing *Miller–El*, 537 U.S. 322)).  We have previously remanded cases for further proceedings when the district court or this court initially rejected IATC claims as procedurally defaulted before *Martinez* and *Trevino* were decided.  *See, e.g.*, *Ibarra v. Stephens*, 723 F.3d 599, 600 (5th Cir. 2013) (vacating a prior panel decision, granting a COA on an IATC claim, and remanding to the district court for further proceedings on that claim); *Cantu v. Thaler*, 682 F.3d 1053, 1053–54 (5th Cir. 2012) (vacating an earlier decision dismissing a federal habeas petition and underlying IATC claim as procedurally defaulted and remanding to the district court to "decide in the first instance the impact of *Martinez v. Ryan* on [the petitioner's] contention that he had cause for his procedural default").[15]

We have declined to remand such cases when petitioners have not presented at least "debatable" ineffective assistance claims,[16] under AEDPA's heightened standard when a state habeas court initially reviewed and rejected the ineffective assistance claims,[17] or when a district court had already

---

[15] *See also Neathery v. Stephens*, 746 F.3d 227, 229 (5th Cir. 2014) (remanding for a reconsideration of IATC claims under *Martinez* and *Trevino* and instructing the district court to determine whether any claims were preserved and if so, the merits of those claims); *Ayestas v. Stephens*, 553 F. App'x 422, 423 (5th Cir. 2014) (similar); *Rayford v. Stephens*, 552 F. App'x 367, 368 (5th Cir. 2014) (similarly remanding "for full reconsideration" under *Trevino* and *Martinez*, after briefing but before any opinion had been issued); *Washington v. Stephens*, 551 F. App'x 122, 123 (5th Cir. 2014) (granting COA on IATC claim and remanding for reconsideration in light of *Trevino*).

[16] *Reed v. Stephens*, 739 F.3d 753, 774 n.11 (5th Cir.) (denying a COA and collecting cases that declined to remand in similar circumstances), *cert. denied*, 135 S. Ct. 435 (2014).

[17] *Escamilla v. Stephens*, 602 F. App'x 939, 940 (5th Cir. 2015), *cert. petition filed*, No. 14-9844 (May 18, 2015).

considered and dismissed the petitioner's claim on the merits.[18] Butler's IATC claim is dissimilar to the claims in *Reed*, *Escamilla*, *Newbury*, and similar cases because no court has yet considered the merits of the claim or whether Butler may show cause and prejudice under *Martinez* and *Trevino*.

In this case, we conclude that the trial court should, in the first instance, be allowed to apply *Martinez* in accordance with *Trevino* to determine whether Butler can demonstrate cause for his procedural default and whether his claims have some merit under *Martinez*. *See Ibarra*, 723 F.3d at 600; *Martinez*, 132 S. Ct. at 1318. We therefore VACATE the district court's dismissal of Claim 2 of Butler's Amended Petition for Writ of Habeas Corpus—Butler's IATC claim—and REMAND this claim for further consideration.[19]

## IV.  Conclusion

We AFFIRM the district court's denial of Butler's Rule 60(b) motion. We also AFFIRM the district court's dismissal of Claims 1, 4, and 7 of Butler's federal habeas petition, respectively, his *Atkins, Brady,* and *Batson* claims. We VACATE the district court's dismissal of Claim 2 of Butler's federal habeas petition, his IATC claim, and REMAND that claim for further consideration.

---

[18] *Newbury v. Stephens*, 756 F.3d 850, 872 (5th Cir. 2014) ("Because Newbury has already received all of the relief available to him under the authority of *Martinez* and *Trevino,* that is, review of the merits by the federal court, it is not necessary for us to remand the case for the district court to determine whether Newbury's state habeas counsel was ineffective or whether his IATC claim has 'some merit' under *Martinez.*"), *cert. denied*, 135 S. Ct. 1197 (2015).

[19] We note that we remand only Claim 2 of Butler's federal habeas petition, for IATC "in failing to investigate and raise Butler's mental state regarding his competence to stand trial and as mitigation evidence during sentencing." *Butler v. Stephens*, 600 F. App'x 246, 247 (5th Cir. 2015). We declined to grant COAs on Claims 3 and 5 of Butler's petition, for incompetence to stand trial and for IATC due to his counsel's failure to challenge his confession as involuntary; therefore, these claims are no longer at issue. *See id.*